# SABLE COMMUNICATIONS OF CALIFORNIA, INC. *v.* FEDERAL COMMUNICATIONS COMMISSION ET AL.

No. 88–515.   Argued April 19, 1989—Decided June 23, 1989*

---

*Together with No. 88–525, *Federal Communications Commission et al.* v. *Sable Communications of California, Inc.*, also on appeal from the same court.

WHITE, J., delivered the opinion for a unanimous Court with respect to Parts I, II, and IV, and the opinion of the Court with respect to Part III, in which REHNQUIST, C. J., and BLACKMUN, O'CONNOR, SCALIA, and KENNEDY, JJ., joined. SCALIA, J., filed a concurring opinion, *post*, p. 131. BRENNAN, J., filed an opinion concurring in part and dissenting in part, in which MARSHALL and STEVENS, JJ., joined, *post*, p. 133.

*Richard G. Taranto* argued the cause for appellees in No. 88–515 and for appellants in No. 88–525. With him on the briefs were *Acting Solicitor General Bryson, Assistant Attorney General Bolton, Deputy Solicitor General Wallace, Barbara L. Herwig, Jacob M. Lewis,* and *Diane S. Killory.*

*Laurence H. Tribe* argued the cause for appellant in No. 88–515 and for appellee in No. 88–525. With him on the brief were *Brian Stuart Koukoutchos, Lawrence E. Abelman, Norman S. Beier, Richard K. Simon,* and *Lee L. Blackman.*†

JUSTICE WHITE delivered the opinion of the Court.

The issue before us is the constitutionality of § 223(b) of the Communications Act of 1934. 47 U. S. C. § 223(b) (1982 ed., Supp. V). The statute, as amended in 1988, imposes an outright ban on indecent as well as obscene interstate commercial telephone messages. The District Court upheld the prohibition against obscene interstate telephone communications for commercial purposes, but enjoined the enforcement of the statute insofar as it applied to indecent messages. We affirm the District Court in both respects.

## I

In 1983, Sable Communications, Inc., a Los Angeles-based affiliate of Carlin Communications, Inc., began offering sexu-

---

†Briefs of *amici curiae* were filed for Minority Members of the Committee on Energy and Commerce of the United States House of Representatives by *John J. Adams;* for Action for Children's Television et al. by *Timothy B. Dyk, Henry Geller, John A. Powell, C. Edwin Baker, Susan M. Liss, Jan G. Levine, Howard Monderer, Loïs J. Schiffer, Karen Christensen, Andrew Jay Schwartzman, Paula A. Jameson, Nancy H. Hendry, J. Laurent Scharff, Jane E. Kirtley, Bruce W. Sanford,* and *Robert A. Beizer;* for the American Family Association, Inc., by *Peggy M. Coleman;* for the Association of Interactive Information Providers by *Earl Nicholas Selby* and *William Bennett Turner;* for Citizens for Decency through Law, Inc., by *Benjamin W. Bull;* for Home Box Office, Inc., by *Daniel M. Waggoner, Stuart R. Dunwoody,* and *Harold E. Akselrad;* for the Pacifica Foundation by *William J. Byrnes;* for Morality in Media, Inc., by *Paul J. McGeady;* for the San Francisco AIDS Foundation by *Leonard Graff;* for the United States Catholic Conference by *Mark E. Chopko;* for John W. Olivo, Jr., by *Robert T. Perry;* and for Jane Roe et al. by *Bruce J. Ennis.*

ally oriented prerecorded telephone messages[1] (popularly known as "dial-a-porn") through the Pacific Bell telephone network. In order to provide the messages, Sable arranged with Pacific Bell to use special telephone lines, designed to handle large volumes of calls simultaneously. Those who called the adult message number were charged a special fee. The fee was collected by Pacific Bell and divided between the phone company and the message provider. Callers outside the Los Angeles metropolitan area could reach the number by means of a long-distance toll call to the Los Angeles area code.

In 1988, Sable brought suit in District Court seeking declaratory and injunctive relief against enforcement of the recently amended §223(b). The 1988 amendments to the statute imposed a blanket prohibition on indecent as well as obscene interstate commercial telephone messages. Sable brought this action to enjoin the Federal Communications Commission (FCC) and the Justice Department from initiating any criminal investigation or prosecution, civil action or administrative proceeding under the statute. Sable also sought a declaratory judgment, challenging the indecency and the obscenity provisions of the amended §223(b) as unconstitutional, chiefly under the First and Fourteenth Amendments to the Constitution.

The District Court found that a concrete controversy existed and that Sable met the irreparable injury requirement for issuance of a preliminary injunction under *Elrod* v. *Burns*, 427 U. S. 347, 373 (1976). 692 F. Supp. 1208, 1209 (CD Cal. 1988). The District Court denied Sable's request for a preliminary injunction against enforcement of the statute's ban on obscene telephone messages, rejecting the argument that the statute was unconstitutional because it created a national standard of obscenity. The District Court, how-

---

[1] A typical prerecorded message lasts anywhere from 30 seconds to two minutes and may be called by up to 50,000 people hourly through a single telephone number. Comment, Telephones, Sex, and the First Amendment, 33 UCLA L. Rev. 1221, 1223 (1986).

ever, struck down the "indecent speech" provision of § 223(b), holding that in this respect the statute was overbroad and unconstitutional and that this result was consistent with *FCC* v. *Pacifica Foundation,* 438 U. S. 726 (1978). "While the government unquestionably has a legitimate interest in, *e. g.,* protecting children from exposure to indecent dial-a-porn messages, § 223(b) is not narrowly drawn to achieve any such purpose. Its flat-out ban of indecent speech is contrary to the First Amendment." 692 F. Supp., at 1209. Therefore, the court issued a preliminary injunction prohibiting enforcement of § 223(b) with respect to any communication alleged to be "indecent."

We noted probable jurisdiction on Sable's appeal of the obscenity ruling (No. 88–515); we also noted probable jurisdiction on the federal parties' cross-appeal of the preliminary injunction holding the statute unconstitutional with respect to its ban on indecent speech (No. 88–525). 488 U. S. 1003 (1989).[2]

## II

While dial-a-porn services are a creature of this decade, the medium, in its brief history, has been the subject of much litigation and the object of a series of attempts at regula-

---

[2] Sable appealed the District Court ruling to the Court of Appeals for the Ninth Circuit, concurrently filing an emergency motion for an injunction pending appeal. The District Court entered an order temporarily enjoining the FCC from enforcing the statute during the pendency of the appeal. After the federal parties filed their notice of appeal to this Court from the District Court's grant of the preliminary injunction as to "indecent" communication, the Court of Appeals for the Ninth Circuit entered an order directing Sable either to file a motion for voluntary dismissal or to show cause why the appeal should not be dismissed for lack of jurisdiction. Sable filed an *ex parte* application to this Court for an injunction pending appeal, as well as a return on the Court of Appeals' order to show cause. The Court of Appeals entered an order dismissing the appeal since the filing of a direct appeal by the FCC had the effect of transferring Sable's appeal to this Court.

tion.[3]   The first litigation involving dial-a-porn was brought under 82 Stat. 112, 47 U. S. C. § 223, which proscribed knowingly "permitting a telephone under [one's] control" to be used to make "any comment, request, suggestion or proposal which is obscene, lewd, lascivious, filthy, or indecent." However, the FCC concluded in an administrative action that the existing law did not cover dial-a-porn. *In re Application for Review of Complaint Filed by Peter F. Cohalan,* FCC File No. E–83–14 (memorandum opinions and orders adopted May 13, 1983).

In reaction to that FCC determination, Congress made its first effort explicitly to address "dial-a-porn" when it added a subsection 223(b) to the 1934 Communications Act.   The provision, which was the predecessor to the amendment at issue in this case, pertained directly to sexually oriented commercial telephone messages and sought to restrict the access of minors to dial-a-porn.   The relevant provision of the Act, Federal Communications Commission Authorization Act of 1983, Pub. L. 98–214, § 8(b), 97 Stat. 1470, made it a crime to use telephone facilities to make "obscene or indecent" interstate telephone communications "for commercial purposes to any person under eighteen years of age or to any other person without that person's consent."   47 U. S. C. § 223(b)(1) (A) (1982 ed., Supp. V).   The statute criminalized commercial transmission of sexually oriented communications to minors and required the FCC to promulgate regulations laying out the means by which dial-a-porn sponsors could screen out underaged callers.   § 223(b)(2).   The enactment provided that it would be a defense to prosecution that the defendant restricted access to adults only, in accordance with procedures established by the FCC.   The statute did not criminal-

---

[3] Dial-a-porn is big business.   The dial-a-porn service in New York City alone received six to seven million calls a month for the 6-month period ending in April 1985.   *Carlin Communications, Inc.* v. *FCC,* 787 F. 2d 846, 848 (CA2 1986).

ize sexually oriented messages to adults, whether the messages were obscene or indecent.

The FCC initially promulgated regulations that would have established a defense to message providers operating only between the hours of 9 p.m. and 8 a.m. eastern time (time channeling) and to providers requiring payment by credit card (screening) before transmission of the dial-a-porn message. Restrictions on Obscene or Indecent Telephone Message Services, 47 CFR § 64.201 (1988). In *Carlin Communications, Inc.* v. *FCC*, 749 F. 2d 113 (1984) *(Carlin I)*, the Court of Appeals for the Second Circuit set aside the time channeling regulations and remanded to the FCC to examine other alternatives, concluding that the operating hours requirement was "both overinclusive and underinclusive" because it denied "access to adults between certain hours, but not to youths who can easily pick up a private or public telephone and call dial-a-porn during the remaining hours." *Id.*, at 121. The Court of Appeals did not reach the constitutionality of the underlying legislation.

In 1985, the FCC promulgated new regulations which continued to permit credit card payment as a defense to prosecution. Instead of time restrictions, however, the Commission added a defense based on use of access codes (user identification codes). Thus, it would be a defense to prosecution under § 223(b) if the defendant, before transmission of the message, restricted customer access by requiring either payment by credit card or authorization by access or identification code. 50 Fed. Reg. 42699, 42705 (1985). The regulations required each dial-a-porn vendor to develop an identification code data base and implementation scheme. Callers would be required to provide an access number for identification (or a credit card) before receiving the message. The access code would be received through the mail after the message provider reviewed the application and concluded through a written age ascertainment procedure that the ap-

plicant was at least 18 years of age. The FCC rejected a proposal for "exchange blocking" which would block or screen telephone numbers at the customer's premises or at the telephone company offices. In *Carlin Communications, Inc.* v. *FCC*, 787 F. 2d 846 (CA2 1986) *(Carlin II)*, the Court of Appeals set aside the new regulations because of the FCC's failure adequately to consider customer premises blocking. Again, the constitutionality of the underlying legislation was not addressed.

The FCC then promulgated a third set of regulations, which again rejected customer premises blocking but added to the prior defenses of credit card payment and access code use a third defense: message scrambling. 52 Fed. Reg. 17760 (1987). Under this system, providers would scramble the message, which would then be unintelligible without the use of a descrambler, the sale of which would be limited to adults. On January 15, 1988, in *Carlin Communications, Inc.* v. *FCC*, 837 F. 2d 546 *(Carlin III)*, cert. denied, 488 U. S. 924 (1988), the Court of Appeals for the Second Circuit held that the new regulations, which made access codes, along with credit card payments and scrambled messages, defenses to prosecution under § 223(b) for dial-a-porn providers, were supported by the evidence, had been properly arrived at, and were a "feasible and effective way to serve" the "compelling state interest" in protecting minors, 837 F. 2d, at 555; but the Court directed the FCC to reopen proceedings if a less restrictive technology became available. The Court of Appeals, however, this time reaching the constitutionality of the statute, invalidated § 223(b) insofar as it sought to apply to nonobscene speech. *Id.*, at 560, 561.

Thereafter, in April 1988, Congress amended § 223(b) of the Communications Act to prohibit indecent as well as obscene interstate commercial telephone communications directed to any person regardless of age. The amended statute, which took effect on July 1, 1988, also eliminated the requirement that the FCC promulgate regulations for re-

stricting access to minors since a total ban was imposed on dial-a-porn, making it illegal for adults, as well as children, to have access to the sexually explicit messages, Pub. L. 100–297, 102 Stat. 424.[4]   It was this version of the statute that was in effect when Sable commenced this action.[5]

---

[4] "(b)(1) Whoever knowingly—

"(A) in the District of Columbia or in interstate or foreign communication, by means of telephone, makes (directly or by recording device) any obscene or indecent communication for commercial purposes to any person, regardless of whether the maker of such communication placed the call; or

"(B) permits any telephone facility under such person's control to be used for an activity prohibited by subparagraph (A),
"shall be fined not more than $50,000 or imprisoned not more than six months, or both."

[5] After Sable and the federal parties filed their jurisdictional statements with this Court, but before we noted probable jurisdiction, § 223(b) was again revised by Congress in § 7524 of the Child Protection and Obscenity Enforcement Act of 1988, § 7524, 102 Stat. 4502, which was enacted as Title VII, Subtitle N, of the Anti-Drug Abuse Act of 1988, Pub. L. 100–690 (codified at 47 U. S. C. § 223(b) (1988 ed.)).   This most recent legislation, signed into law on November 18, 1988, places the prohibition against obscene commercial telephone messages in a subsection separate from that containing the prohibition against indecent messages.   In addition, under the new law, the prohibition against obscene or indecent telephone messages is enforceable only through criminal penalties and no longer through administrative proceedings by the FCC.

Section 223(b) of the Communications Act of 1934, as amended by § 7524 of the Child Protection and Obscenity Enforcement Act of 1988, states in pertinent part:

"(b)(1) Whoever knowingly—

"(A) in the District of Columbia or in interstate or foreign communication, by means of telephone, makes (directly or by recording device) any obscene communication for commercial purposes to any person, regardless of whether the maker of such communication placed the call; or

"(B) permits any telephone facility under such person's control to be used for an activity prohibited by clause (i),
"shall be fined in accordance with title 18 of the United States Code, or imprisoned not more than two years, or both.

"(2) Whoever knowingly—

"(A) in the District of Columbia or in interstate or foreign communication, by means of telephone, makes (directly or by recording device) any

## III

In the ruling at issue in No. 88–515, the District Court upheld § 223(b)'s prohibition of obscene telephone messages as constitutional. We agree with that judgment. In contrast to the prohibition on indecent communications, there is no constitutional barrier to the ban on obscene dial-a-porn recordings. We have repeatedly held that the protection of the First Amendment does not extend to obscene speech. See, *e. g., Paris Adult Theatre I* v. *Slaton*, 413 U. S. 49, 69 (1973). The cases before us today do not require us to decide what is obscene or what is indecent but rather to determine whether Congress is empowered to prohibit transmission of obscene telephonic communications.

In its facial challenge to the statute, Sable argues that the legislation creates an impermissible national standard of obscenity, and that it places message senders in a "double bind" by compelling them to tailor all their messages to the least tolerant community.[6]

We do not read § 223(b) as contravening the "contemporary community standards" requirement of *Miller* v. *California*, 413 U. S. 15 (1973). Section 223(b) no more establishes a "national standard" of obscenity than do federal statutes

---

indecent communication for commercial purposes to any person, regardless of whether the maker of such communication placed the call; or

"(B) permits any telephone facility under such person's control to be used for an activity prohibited by clause (i),

"shall be fined not more than $50,000 or imprisoned not more than six months, or both." 102 Stat. 4502.

Since the substantive prohibitions under this amendment remain the same, this case is not moot.

[6] In its jurisdictional statement, Sable also argued that the prohibition on obscene calls is not severable from the ban on indecent messages. This last claim was not renewed in Sable's brief on the merits, presumably as a result of the subsequent modification of the statute in which Congress specifically placed the ban on obscene commercial telephone messages in a subsection separate from the prohibition against indecent messages. Thus, the severability question is no longer before us.

prohibiting the mailing of obscene materials, 18 U. S. C. § 1461, see *Hamling* v. *United States*, 418 U. S. 87 (1974), or the broadcasting of obscene messages, 18 U. S. C. § 1464. In *United States* v. *Reidel*, 402 U. S. 351 (1971), we said that Congress could prohibit the use of the mails for commercial distribution of materials properly classifiable as obscene, even though those materials were being distributed to willing adults who stated that they were adults. Similarly, we hold today that there is no constitutional stricture against Congress' prohibiting the interstate transmission of obscene commercial telephone recordings.

We stated in *United States* v. *12 200-ft. Reels of Film*, 413 U. S. 123 (1973), that the *Miller* standards, including the "contemporary community standards" formulation, apply to federal legislation. As we have said before, the fact that "distributors of allegedly obscene materials may be subjected to varying community standards in the various federal judicial districts into which they transmit the materials does not render a federal statute unconstitutional because of the failure of application of uniform national standards of obscenity." *Hamling* v. *United States, supra*, at 106.

Furthermore, Sable is free to tailor its messages, on a selective basis, if it so chooses, to the communities it chooses to serve. While Sable may be forced to incur some costs in developing and implementing a system for screening the locale of incoming calls, there is no constitutional impediment to enacting a law which may impose such costs on a medium electing to provide these messages. Whether Sable chooses to hire operators to determine the source of the calls or engages with the telephone company to arrange for the screening and blocking of out-of-area calls or finds another means for providing messages compatible with community standards is a decision for the message provider to make. There is no constitutional barrier under *Miller* to prohibiting communications that are obscene in some communities under local standards even though they are not obscene in

others. If Sable's audience is comprised of different communities with different local standards, Sable ultimately bears the burden of complying with the prohibition on obscene messages.

IV

In No. 88–525, the District Court concluded that while the Government has a legitimate interest in protecting children from exposure to indecent dial-a-porn messages, § 223(b) was not sufficiently narrowly drawn to serve that purpose and thus violated the First Amendment. We agree.

Sexual expression which is indecent but not obscene is protected by the First Amendment; and the federal parties do not submit that the sale of such materials to adults could be criminalized solely because they are indecent. The Government may, however, regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest. We have recognized that there is a compelling interest in protecting the physical and psychological well-being of minors. This interest extends to shielding minors from the influence of literature that is not obscene by adult standards. *Ginsberg* v. *New York*, 390 U. S. 629, 639–640 (1968); *New York* v. *Ferber*, 458 U. S. 747, 756–757 (1982). The Government may serve this legitimate interest, but to withstand constitutional scrutiny, "it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms. *Hynes* v. *Mayor of Oradell*, 425 U. S., at 620; *First National Bank of Boston* v. *Bellotti*, 435 U. S. 765, 786 (1978)." *Schaumburg* v. *Citizens for a Better Environment*, 444 U. S. 620, 637 (1980). It is not enough to show that the Government's ends are compelling; the means must be carefully tailored to achieve those ends.

In *Butler* v. *Michigan*, 352 U. S. 380 (1957), a unanimous Court reversed a conviction under a statute which made it an offense to make available to the general public materials

found to have a potentially harmful influence on minors. The Court found the law to be insufficiently tailored since it denied adults their free speech rights by allowing them to read only what was acceptable for children. As Justice Frankfurter said in that case, "[s]urely this is to burn the house to roast the pig." *Id.*, at 383. In our judgment, this case, like *Butler*, presents us with "legislation not reasonably restricted to the evil with which it is said to deal." *Ibid.*

In attempting to justify the complete ban and criminalization of the indecent commercial telephone communications with adults as well as minors, the federal parties rely on *FCC* v. *Pacifica Foundation*, 438 U. S. 726 (1978), a case in which the Court considered whether the FCC has the power to regulate a radio broadcast that is indecent but not obscene. In an emphatically narrow holding, the *Pacifica* Court concluded that special treatment of indecent broadcasting was justified.

*Pacifica* is readily distinguishable from these cases, most obviously because it did not involve a total ban on broadcasting indecent material. The FCC rule was not "'intended to place an absolute prohibition on the broadcast of this type of language, but rather sought to channel it to times of day when children most likely would not be exposed to it.'" *Pacifica, supra,* at 733, quoting *Pacifica Foundation*, 59 F. C. C. 2d 892 (1976). The issue of a total ban was not before the Court. 438 U. S., at 750, n. 28.

The *Pacifica* opinion also relied on the "unique" attributes of broadcasting, noting that broadcasting is "uniquely pervasive," can intrude on the privacy of the home without prior warning as to program content, and is "uniquely accessible to children, even those too young to read." *Id.*, at 748–749. The private commercial telephone communications at issue here are substantially different from the public radio broadcast at issue in *Pacifica*. In contrast to public displays, unsolicited mailings and other means of expression which the recipient has no meaningful opportunity to avoid, the dial-it

medium requires the listener to take affirmative steps to receive the communication. There is no "captive audience" problem here; callers will generally not be unwilling listeners. The context of dial-in services, where a caller seeks and is willing to pay for the communication, is manifestly different from a situation in which a listener does not want the received message. Placing a telephone call is not the same as turning on a radio and being taken by surprise by an indecent message. Unlike an unexpected outburst on a radio broadcast, the message received by one who places a call to a dial-a-porn service is not so invasive or surprising that it prevents an unwilling listener from avoiding exposure to it.

The Court in *Pacifica* was careful "to emphasize the narrowness of [its] holding." *Id.*, at 750. As we did in *Bolger* v. *Youngs Drug Products Corp.*, 463 U. S. 60 (1983), we distinguish *Pacifica* from the cases before us and reiterate that "the government may not 'reduce the adult population . . . to . . . only what is fit for children.'" 463 U. S., at 73, quoting *Butler* v. *Michigan, supra,* at 383.

The federal parties nevertheless argue that the total ban on indecent commercial telephone communications is justified because nothing less could prevent children from gaining access to such messages. We find the argument quite unpersuasive. The FCC, after lengthy proceedings, determined that its credit card, access code, and scrambling rules were a satisfactory solution to the problem of keeping indecent dial-a-porn messages out of the reach of minors. The Court of Appeals, after careful consideration, agreed that these rules represented a "feasible and effective" way to serve the Government's compelling interest in protecting children. 837 F. 2d, at 555.

The federal parties now insist that the rules would not be effective enough—that enterprising youngsters could and would evade the rules and gain access to communications from which they should be shielded. There is no evidence in the record before us to that effect, nor could there be since

the FCC's implementation of § 223(b) prior to its 1988 amendment has never been tested over time. In this respect, the federal parties assert that in amending § 223(b) in 1988, Congress expressed its view that there was not a sufficiently effective way to protect minors short of the total ban that it enacted. The federal parties claim that we must give deference to that judgment.

To the extent that the federal parties suggest that we should defer to Congress' conclusion about an issue of constitutional law, our answer is that while we do not ignore it, it is our task in the end to decide whether Congress has violated the Constitution. This is particularly true where the Legislature has concluded that its product does not violate the First Amendment. "Deference to a legislative finding cannot limit judicial inquiry when First Amendment rights are at stake." *Landmark Communications, Inc.* v. *Virginia,* 435 U. S. 829, 843 (1978). The federal parties, however, also urge us to defer to the factual findings by Congress relevant to resolving the constitutional issue; they rely on *Walters* v. *National Association of Radiation Survivors,* 473 U. S. 305, 331, n. 12 (1985), and *Rostker* v. *Goldberg,* 453 U. S. 57, 72–73 (1981). Beyond the fact that whatever deference is due legislative findings would not foreclose our independent judgment of the facts bearing on an issue of constitutional law, our answer is that the congressional record contains no legislative findings that would justify us in concluding that there is no constitutionally acceptable less restrictive means, short of a total ban, to achieve the Government's interest in protecting minors.

There is no doubt Congress enacted a total ban on both obscene and indecent telephone communications. But aside from conclusory statements during the debates by proponents of the bill,[7] as well as similar assertions in hearings on

---

[7] See *e. g.,* 134 Cong. Rec. 7331 (1988) (statement of Rep. Bliley); *id.,* at 7336 (statement of Rep. Coats); *id.,* at 7330 (statement of Rep. Hall; *id.,* at 7599 (statement of Sen. Hatch).

a substantially identical bill the year before, H. R. 1786,[8] that under the FCC regulations minors could still have access to dial-a-porn messages, the congressional record presented to us contains no evidence as to *how* effective or ineffective the FCC's most recent regulations were or might prove to be. It may well be that there is no fail-safe method of guaranteeing that never will a minor be able to access the dial-a-porn system. The bill that was enacted, however, was introduced on the floor; nor was there a committee report on the bill from which the language of the enacted bill was taken. No Congressman or Senator purported to present a considered judgment with respect to how often or to what extent minors could or would circumvent the rules and have access to dial-a-porn messages. On the other hand, in the hearings on H. R. 1786, the Committee heard testimony from the FCC and other witnesses that the FCC rules would be effective and should be tried out in practice.[9] Furthermore, at the conclusion of the hearing, the Chairman of the Subcommittee suggested consultation looking toward "drafting a piece of legislation that will pass constitutional muster, while at the same time providing for the practical relief which families and groups are looking for." Hearings, at 235. The bill never emerged from Committee.

For all we know from this record, the FCC's technological approach to restricting dial-a-porn messages to adults who seek them would be extremely effective, and only a few of the most enterprising and disobedient young people would manage to secure access to such messages.[10] If this is the case,

---

[8] Telephone Decency Act of 1987: Hearing on H. R. 1786 before the Subcommittee on Telecommunications and Finance of the House Committee on Energy and Commerce, 100th Cong., 1st Sess., 2, 15 (1987) (Rep. Bliley) (Hearings); *id.*, at 18 (Rep. Coats); *id.*, at 20 (Rep. Tauke).

These hearings were held while *Carlin III* was pending before the Court of Appeals for the Second Circuit.

[9] See, *e. g.*, Hearings, at 129, 130, 132–133, 195–196, 198–200, 230–231.

[10] In the Hearings on H. R. 1786, *id.*, at 231–232, the following colloquy occurred between Congressman Nielson and Mr. Ward, a United States Attorney interested in § 223(b) prosecutions:

it seems to us that § 223(b) is not a narrowly tailored effort to serve the compelling interest of preventing minors from being exposed to indecent telephone messages. Under our precedents, § 223(b), in its present form, has the invalid effect of limiting the content of adult telephone conversations to that which is suitable for children to hear. It is another case of "burn[ing] the house to roast the pig." *Butler* v. *Michigan*, 352 U. S., at 383.

Because the statute's denial of adult access to telephone messages which are indecent but not obscene far exceeds that which is necessary to limit the access of minors to such messages, we hold that the ban does not survive constitutional scrutiny.

Accordingly, we affirm the judgment of the District Court in Nos. 88–515 and 88–525.

*It is so ordered.*

JUSTICE SCALIA, concurring.

I join the opinion of the Court, but add a few words. It should not be missed that we are making a value judgment with respect to the indecency portion of the statute. The conclusion of the reasoning in Part IV of our opinion is as follows:

> "For all we know from this record, the FCC's technological approach to restricting dial-a-porn messages to adults who seek them would be extremely effective, and only a few of the most enterprising and disobedient

---

"Mr. NIELSON. Let me ask the question I asked the previous panel. Do any of the current alternatives by the FCC—that is the access codes, the credit cards, or the scrambling—do any of those provide a foolproof way of limiting dial-a-porn access to adults only? Either of you.

"Mr. WARD. I think that—it's not foolproof, but I think the access code requirement and the screening option, both provide the means of dramatically reducing the number of calls from minors in the United States, almost eliminating them. So I think that it would be a very effective way to do it.

"Mr. NIELSON. But not foolproof?

"Mr. WARD. Not absolutely foolproof."

young people would manage to secure access to such messages. If this is the case, it seems to us that § 223(b) is not a narrowly tailored effort to serve the compelling interest of preventing minors from being exposed to indecent telephone messages." *Ante*, at 130–131.

We could as well have said:

"We know from this record that the FCC's technological approach to restricting dial-a-porn messages to adults who seek them would be inadequate, since some enterprising and disobedient young people would manage to secure access to such messages. Since this is the case, it seems to us that § 223(b) is a narrowly tailored effort to serve the compelling interest of preventing minors from being exposed to indecent telephone messages."

I join the Court's opinion because I think it correct that a wholesale prohibition upon adult access to indecent speech cannot be adopted merely because the FCC's alternate proposal could be circumvented by as few children as the evidence suggests. But where a reasonable person draws the line in this balancing process—that is, how few children render the risk unacceptable—depends in part upon what mere "indecency" (as opposed to "obscenity") includes. The more narrow the understanding of what is "obscene," and hence the more pornographic what is embraced within the residual category of "indecency," the more reasonable it becomes to insist upon greater assurance of insulation from minors. So while the Court is unanimous on the reasoning of Part IV, I am not sure it is unanimous on the assumptions underlying that reasoning. I do not believe, for example, that any sort of sexual activity portrayed or enacted over the phone lines would fall outside of the obscenity portion of the statute that we uphold, and within the indecency portion that we strike down, so long as it appeals only to "normal, healthy sexual desires" as opposed to "shameful or morbid" ones. *Brockett* v. *Spokane Arcades, Inc.*, 472 U. S. 491, 498 (1985).

In joining Part IV, I do so with the understanding that its examination of the legislative history (*ante*, at 129–130) is merely meant to establish that no more there than anywhere else can data be found demonstrating the infeasibility of alternative means to provide (given the nature of this material) adequate protection of minors. I do not understand the Court to suggest that such data must have been before Congress in order for the law to be valid. Even though "[n]o Congressman or Senator purported to present a considered judgment" on infeasibility, *ante*, at 130, the law would be valid if infeasibility was true. Neither due process nor the First Amendment requires legislation to be supported by committee reports, floor debates, or even consideration, but only by a vote.

Finally, I note that while we hold the Constitution prevents Congress from banning indecent speech in this fashion, we do not hold that the Constitution requires public utilities to carry it.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL and JUSTICE STEVENS join, concurring in part and dissenting in part.

I agree that a statute imposing criminal penalties for making, or for allowing others to use a telephone under one's control to make, any indecent telephonic communication for a commercial purpose is patently unconstitutional. I therefore join Parts I, II, and IV of the Court's opinion.

In my view, however, 47 U. S. C. § 223(b)(1)(A)'s parallel criminal prohibition with regard to obscene commercial communications likewise violates the First Amendment. I have long been convinced that the exaction of criminal penalties for the distribution of obscene materials to consenting adults is constitutionally intolerable. In my judgment, "the concept of 'obscenity' cannot be defined with sufficient specificity and clarity to provide fair notice to persons who create and distribute sexually oriented materials, to prevent substantial erosion of protected speech as a byproduct of the attempt

to suppress unprotected speech, and to avoid very costly institutional harms." *Paris Adult Theatre I* v. *Slaton,* 413 U. S. 49, 103 (1973) (BRENNAN, J., dissenting). To be sure, the Government has a strong interest in protecting children against exposure to pornographic material that might be harmful to them. *New York* v. *Ferber,* 458 U. S. 747, 775–777 (1982) (BRENNAN, J., concurring in judgment); *Ginsberg* v. *New York,* 390 U. S. 629 (1968). But a complete criminal ban on obscene telephonic messages for profit is "unconstitutionally overbroad, and therefore invalid on its face," as a means for achieving this end. *Miller* v. *California,* 413 U. S. 15, 47 (1973) (BRENNAN, J., dissenting).

The very evidence the Court adduces to show that denying adults access to all indecent commercial messages "far exceeds that which is necessary to limit the access of minors to such messages," *ante,* at 131, also demonstrates that forbidding the transmission of all obscene messages is unduly heavyhanded. After painstaking scrutiny, both the FCC and the Second Circuit found that "a scheme involving access codes, scrambling, and credit card payment is a feasible and effective way to serve this compelling state interest" in safeguarding children. *Carlin Communications, Inc.* v. *FCC,* 837 F. 2d 546, 555, cert. denied, 488 U. S. 924 (1988). And during the 1987 hearings on H. R. 1786, a United States attorney speaking on behalf of the Justice Department described the FCC's proposed regulations as "very effective," because they would "dramatically reduc[e] the number of calls from minors in the United States, almost eliminating them." Telephone Decency Act of 1987: Hearings on H. R. 1786 before the Subcommittee on Telecommunications and Finance of the House Committee on Energy and Commerce, 100th Cong., 1st Sess., 231 (1987). In addition, as the Court notes, *ante,* at 129–130, no contrary evidence was before Congress when it voted to impose a total prohibition on obscene telephonic messages for profit. Hence, the federal parties cannot plausibly claim that their legitimate interest

in protecting children warrants this Draconian restriction on the First Amendment rights of adults who seek to hear the messages that Sable and others provide.

Section 223(b)(1)(A) unambiguously proscribes all obscene commercial messages, and thus admits of no construction that would render it constitutionally permissible. Because this criminal statute curtails freedom of speech far more radically than the Government's interest in preventing harm to minors could possibly license on the record before us, I would reverse the District Court's decision in No. 88–515 and strike down the statute on its face. Accordingly, I dissent from Part III of the Court's opinion.