Wayne **BAKER**, Plaintiff,

v.

Lamar **GLOVER**, et al., Defendants.

Civ. A. No. 87–T–948–N.

United States District Court,
M.D. Alabama, N.D.

Oct. 3, 1991.

Edward Still, Birmingham, Ala., Neil Bradley, ACLU Foundation, Atlanta, Ga., for plaintiff.

Don Siegelman, Alabama Atty. Gen., Stephen N. Dodd, Asst. Atty. Gen., Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Plaintiff Wayne Baker has brought this lawsuit claiming that the application of one of the State of Alabama's obscenity statutes, § 13A–12–131 of the 1975 Code of

Alabama, as amended, to a bumper sticker on his truck violates his right to freedom of expression protected by the first and fourteenth amendments to the United States Constitution as enforced through 42 U.S.C.A. § 1983.[1] He seeks only declaratory relief. The defendants are a commander of the Alabama State Patrol, who stopped Baker and warned him that his bumper sticker violated the obscenity law, and the State Attorney General. Baker has properly invoked the jurisdiction of the court under 28 U.S.C.A. § 1331 and § 1343. After closely reviewing the law and evidence presented, the court concludes that, to the extent the new statute prohibits the display of Baker's bumper sticker, it violates his right to freedom of expression.

## I. BACKGROUND

The facts of this case are brief and straightforward. On September 1, 1987, the Alabama Department of Public Safety adopted a policy according to which officers would immediately begin issuing "warning tickets" for violations of the state's newly enacted obscenity statute, § 13A–12–131, and would start enforcing the law on October 12, 1987. This statute provides that: "It shall be unlawful for any person to display in public any bumper sticker, sign or writing which depicts obscene language descriptive of sexual or excretory activities."[2]

Baker is a truck driver from Tuscaloosa, Alabama. Aware that motorists have been encouraged to report the indiscretions of truck drivers through bumper stickers that say, for example, "How's My Driving? Call 1–800–2–ADVISE," and eager to protest this development, Baker purchased a bumper sticker from a novelty shop in Panama City, Florida, which reads: "How's My Driving? Call 1–800–EAT SHIT!," and placed it on the back of his pickup truck.

Lamar Glover is the commander of the Alabama Department of Public Safety's Dothan post. In September 1987, Glover stopped Baker on Highway 231, outside of Dothan, and warned him that the bumper sticker on his truck violated § 13A–12–131. Glover threatened Baker with a fine for violating this statute unless Baker removed the words "eat shit" from his bumper sticker. Glover also told Baker that bumper stickers containing the words "crap" or "doo-doo" would violate the new statute. Baker agreed to scratch out the offending language.

Baker later brought this lawsuit charging that application of the new obscenity law to his bumper sticker violated his right to freedom of expression under the first and fourteenth amendments as enforced through 42 U.S.C.A. § 1983. The Alabama Department of Public Safety directed state troopers not to enforce the statute while this suit was pending.

## II. DISCUSSION

The defendants offer a slew of justifications for the obscenity statute and its application to Baker's bumper sticker. They argue that the bumper sticker is not constitutionally protected speech because (1) it is obscene as to adults, (2) it is obscene as to children, (3) its message constitutes "fighting words," and (4) it is likely to distract motorists and as a result interfere with highway safety. The defendants also contend that Baker lacks standing to challenge the constitutionality of § 13A–12–131 because he has not been and will not likely be prosecuted under the new law. After close scrutiny, the court finds each of these arguments in defense of the obscenity stat-

---

1. The first amendment guarantee of freedom of speech is protected from impairment by the states by the due process clause of the fourteenth amendment. *See, e.g., Gitlow v. New York,* 268 U.S. 652, 666, 45 S.Ct. 625, 630, 69 L.Ed. 1138 (1925).

2. The law is titled, "Public display of obscene sticker, sign, etc." The remainder of the statute states that "Any person convicted of a violation of this section shall be guilty of a Class C misde-

meanor and shall be punished as prescribed by law." At the time the law was passed, the 1975 Alabama Code already contained several other provisions that criminalize the public display of obscene materials. *See* 1975 Ala.Code §§ 13A–12–151 and 13A–12–171. These provisions were replaced by a new "Anti-Obscenity Enforcement Act" in 1989. *See* 1975 Ala.Code §§ 13A–12–200.1 through 13A–12–200.10.

ute to be without merit and concludes that, to the extent it applies to Baker's bumper sticker, § 13A–12–131 violates his right to freedom of speech guaranteed by the first and fourteenth amendments to the United States Constitution.

### A.

As a threshold matter, the court is not persuaded by defendants' contention that Baker lacks standing to challenge the constitutionality of the statute as applied to his bumper sticker. Federal courts have not hesitated to adjudicate pre-enforcement claims based on credible threats of future criminal prosecution. *See, e.g., Virginia v. American Booksellers Ass'n, Inc.* 484 U.S. 383, 392–93, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988); *City of Houston v. Hill,* 482 U.S. 451, 459 n. 7, 107 S.Ct. 2502, 2508 n. 7, 96 L.Ed.2d 398 (1987). In this case, the possibility that Baker may be prosecuted for displaying his bumper sticker is real and substantial. Indeed, Glover told Baker he would be fined for violating the statute if he refused to scratch the offending words off his sticker. Moreover, state officials were prepared to begin enforcing § 13A–12–131 and have suspended such enforcement only because this lawsuit is pending.

### B.

This lawsuit concerns only words or speech; the "only 'conduct' which the State sought to punish is the fact of communication." *Cohen v. California,* 403 U.S. 15, 18, 91 S.Ct. 1780, 1784, 29 L.Ed.2d 284 (1971). Nevertheless, it is firmly established that obscene speech is not protected by the first amendment and thus may be banned by government. *Sable Communications of California, Inc. v. F.C.C.,* 492 U.S. 115, 124, 109 S.Ct. 2829, 2835, 106 L.Ed.2d 93 (1989). It is also similarly well accepted, however, that the Constitution strictly limits the way in which government may define obscenity for the purposes of proscribing such expression. In the keystone case in this area, *Miller v. California,* the Supreme Court declared that prohibitions of this sort must be "limited to

works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973). *Accord Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 501, 105 S.Ct. 2794, 2800, 86 L.Ed.2d 394 (1985). As the court will explain below, because Baker's bumper sticker could not reasonably be understood to appeal to the prurient interest in sex and because it has without question serious literary, artistic, and political value, it does not satisfy either the first or third prong of the *Miller* test and thus constitutes constitutionally protected expression beyond the reach of government prohibition.

In another case involving profane speech, *Cohen v. California,* the Supreme Court declared unequivocally that "Whatever else may be necessary to give rise to the States' broader power to prohibit obscene expression, such expression must be, in some significant way, erotic." 403 U.S. at 20, 91 S.Ct. at 1785. There, Paul Robert Cohen challenged his state conviction for wearing, in the corridors of a municipal court where children were present, a jacket bearing the words "Fuck the Draft." Cohen wore the jacket to express the depth of his feelings against the Vietnam War and the draft. In overturning the conviction because the words were not in any significant way erotic, the Supreme Court further wrote that "It cannot plausibly be maintained that this vulgar allusion to the Selective Service System would conjure up such psychic stimulation in anyone likely to be confronted with [plaintiff's] crudely defaced jacket." *Id.* Although *Cohen* was decided prior to *Miller,* its holding that the isolated use of profanity is not obscene was reaffirmed in cases subsequent to *Miller.* For example, in *Hess v. Indiana,* in finding that the words "We'll take the fucking street later" could not be punished as obscene, the Court wrote that "After *Cohen* ... such a contention with regard to the language at issue would not be tenable". 414 U.S. 105, 107, 94 S.Ct. 326, 328, 38 L.Ed.2d 303 (1973) (per curiam). Similarly in *F.C.C. v. Pacifi-*

*ca Foundation,* in arguing before the Supreme Court that a 12–minute monologue entitled "Filthy Words" by satiric humorist George Carlin was "patently offensive" and thus subject to limited broadcast regulation, the Federal Communications Commission acknowledged that the monologue could not be considered obscene. 438 U.S. 726, 731, 98 S.Ct. 3026, 3031, 57 L.Ed.2d 1073 (1978). Indeed, citing *Hess,* the Court observed that "Some uses of even the most offensive words are unquestionably protected." *Id.* at 746, 98 S.Ct. at 3039. Baker's bumper sticker, with its one dirty word, is clearly no more erotic than Cohen's jacket or Carlin's monologue.

■ The defendants take pains to demonstrate that the phrase "Eat Shit" could possibly appeal to the prurient interests of certain sexual deviants. In support of this view, they have presented extensive testimony on the subjects of "coprophilia" (specific fixation upon the products of bodily excretion), "coprophagy" (erotic interest in consuming fecal excrement), and "coprolalia" (the uttering of obscenities in order to achieve sexual gratification). The defendants are correct that material appealing to the "prurient interest" may also include that "whose predominate appeal is to 'a shameful or morbid interest in ... excretion,'" *Brockett,* 472 U.S. at 498, 105 S.Ct. at 2799, *quoting Roth v. United States,* 354 U.S. 476, 487 n. 20, 77 S.Ct. 1304, 1310 n. 20, 1 L.Ed.2d 1498 (1957). Nevertheless, it is well established that the prurient appeal inquiry requires a fact-finder to assess a work "in terms of the sexual interests of its intended and probable recipient group." *Mishkin v. New York,* 383 U.S. 502, 509, 86 S.Ct. 958, 964, 16 L.Ed.2d 56 (1966). The court is unpersuaded that a facetious message employing a single profane word could be viewed as carrying such an abnormal appeal. Moreover, it is clear that Baker did not intend to excite sexual deviants through his bumper sticker nor were a significant proportion of those exposed to the sticker likely to be persons suffering from such abnormalities.

■ Baker's bumper sticker is also protected speech under the first amendment because it has serious literary and political value. *See Miller,* 413 U.S. at 24, 93 S.Ct. at 2615. Although surely not a likely candidate for a literary prize, Baker's bumper sticker has serious literary value as a parody of stickers such as, "How's My Driving? Call 1–800–2 ADVISE." It and other similar bumper stickers can be compared in many respects to riddles, puns, and proverbs in that they are very short, usually a line or two, and concise in their message. As the Supreme Court has observed, "one man's vulgarity is another's lyric." *Cohen,* 403 U.S. at 25, 91 S.Ct. at 1788. Baker's sticker also has serious political value as a protest against the "Big Brother" mentality promoted by such other bumper stickers that urge the public to report the indiscretions of truck drivers.

It is also important to make some other related observations. First, for those citizens without wealth or power, a bumper sticker may be one of the few means available to convey a message to a public audience. *See Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 812 n. 30, 104 S.Ct. 2118, 2133 n. 30, 80 L.Ed.2d 772 (1984) ("the Court has shown special solicitude for forms of expression that are much less expensive than feasible alternatives and hence may be important to a large segment of the citizenry"). Furthermore, in this case, Baker could truly communicate his message satirizing other bumper stickers *only* through a bumper sticker and with the precise language chosen. For his message to have its intended sharp punch, the medium for the parody and its object not only had to be the same but the number of characters in the parody and its object had to be the same. Moreover, as with Cohen's jacket, the objectionable language was itself essential to the sticker's message. "Much linguistic expression ... conveys not only ideas capable of relatively precise, detached explication, but otherwise inexpressible emotions as well. In fact, words are often chosen as much for their emotive as their cognitive force." *Cohen,* 403 U.S. at 26, 91 S.Ct. at 1788. Here, in short, the words "Eat Shit" cleverly performed a dual role: they not only represented the seven-digit number in

the parodied bumper sticker, they also humorously conveyed Baker's strong feelings about such numbers.

### C.

■ The defendants further argue that the sticker is obscene as to minors and therefore unprotected by the first amendment. Relying on *Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), the defendants contend that material to which minors are exposed may be judged to be obscene under a modified *Miller* test, based on what appeals, offends, and is of no serious value to minors. They then further point to *Pacifica Foundation* to support their contention that § 13A–12–131 is sufficiently narrowly tailored not to burden unnecessarily the first-amendment rights of adults.

Admittedly, in *American Booksellers v. Webb*, 919 F.2d 1493, 1503 & n. 18 (1990), the Eleventh Circuit Court of Appeals indicated that *Miller* modified *Ginsberg* in just such a manner.[3] Nevertheless, there is still the requirement that the work appeal to the prurient interest in sex, albeit the interest of minors. As the Supreme Court explained in *Erznoznik v. City of Jacksonville*, in upholding a challenge to a city ordinance prohibiting drive-in theater owners, whose screens are visible from a public street or place, from showing films containing nudity,

under any test of obscenity as to minors not all nudity would be proscribed. Rather, to be obscene 'such expression must be, in some significant way, erotic.' 422 U.S. 205, 213 n. 10, 95 S.Ct. 2268, 2275 n. 10, 45 L.Ed.2d 125 (1975), *quoting Cohen*, 403 U.S. at 20, 91 S.Ct. at 1785. There is no evidence that the phrase "Eat Shit" appeals to the prurient interest of minors any more than adults. Moreover, even under a standard modified to account for children, the bumper sticker would still have serious literary and political value for the reason given previously.[4]

### D.

■ Defendants contend, alternatively, that the words "Eat Shit" on Baker's bumper sticker are "fighting words," *see Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), and therefore may be criminalized without offending the constitutional guarantee of freedom of speech. This argument also is without merit. To the extent that there are any true fighting words left, the court is of the opinion that the phrase "Eat Shit" does not fall within this category.[5] Such words do not "by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.* at 572, 62 S.Ct. at 769. For better or worse, society has become quite tolerant of profane speech. Nor did the objectionable language at issue in this case constitute fighting words in the

3. The court has assumed that § 13A–12–131 was written, in fact, to apply a modified *Miller* test. There is, however, nothing at all in the statute to support this assumption. Section 13A–12–131 differs dramatically from, for example, the Georgia statute upheld in *American Booksellers v. Webb*. That statute provides, in fine detail, for a modified test under the rubric "harmful to minors," as follows:

(A) Taken as a whole, predominantly appeals to the prurient, shameful, or morbid interest of minors;
(B) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors; and
(C) Is, when taken as a whole, lacking in serious literary, artistic, political, or scientific value for minors.

919 F.2d at 1513. Alabama's new Anti–Obscenity Enforcement Act uses similar language, again

under the rubric "harmful to minors." 1975 Ala.Code § 13A–12–200.1(16). *See note 2, supra.*

4. The Eleventh Circuit has made clear that "if any reasonable minor, including a seventeen-year-old, would find serious value, the material is not harmful to minors," that is, is not obscene as to minors. *American Booksellers v. Webb*, 919 F.2d at 1503–04. Therefore, "if a work is found to have serious literary, artistic, political or scientific value for a legitimate minority of normal, older adolescents, then it cannot be said to lack such value for the entire class of juveniles taken as a whole." *Id. quoting Commonwealth v. American Booksellers Ass'n*, 236 Va. 168, 372 S.E.2d 618, 624 (1988).

5. *See* L. Tribe, American Constitutional Law, § 12–10 at 850 (2d ed. 1988) (fighting words doctrine "no longer favored by the court").

context in which Baker used it on his bumper sticker. "No individual actually or likely to be present could reasonably have regarded the words … as a direct personal insult." *Cohen*, 403 U.S. at 20, 91 S.Ct. at 1786. *See also Pacifica Foundation*, 438 U.S. at 756, 98 S.Ct. at 3044 (Powell, J., concurring). Accordingly, this card in the house constructed by defendants to support the application of § 13A–12–131 to Baker's bumper sticker must also fall.

### E.

■ Finally, defendants seek to justify § 13A–12–131 as a valid "traffic" regulation. They contend that the statute may constitutionally be applied to prohibit Baker's and other "explicit and eye-catching" bumper stickers which "have a tendency to attract, hold, and/or otherwise divert the attention of motorists," and thus interfere with "safe, responsible driving." However, nothing in the record indicates that either the law itself or its application to Baker's bumper sticker was aimed at traffic regulation, rather than simply profane language. Moreover, defendants have presented no logical or factual support for the proposition that indecent bumper stickers are more likely to distract motorists than other bumper stickers or indeed other objects visible along the state's thoroughfares. *See Erznoznik v. City of Jacksonville*, 422 U.S. at 214–15, 95 S.Ct. at 2275–76 (rejecting similar argument concerning drive-in movies visible from public streets).[6]

### III. CONCLUSION

Before closing the court would note the limited nature of its holding today. Section 13A–12–131 is expressly limited in its terminology and application to *"obscene* language descriptive of sexual or excretory activities" (emphasis added); the law does not address "indecent" or "profane" language which might be harmful to children. The court's holding, therefore, is limited to the specific conclusion that Baker's bumper

sticker cannot be considered obscene and thus falling within the statute's ban, without running afoul of the first amendment. This court is therefore not confronted with a much different and more difficult issue of how far the government may go in regulating offensive or sexually explicit but non-obscene speech to which minors are exposed. The law is somewhat unsettled in this area. For example, in *Sable Communications*, the Supreme Court struck down a total ban on indecent commercial telephone communications even though the ban was designed to protect children. The Court observed that, although the state may properly serve its legitimate interests in "shielding minors from the influence of literature that is not obscene by adult standards," it may do so only "by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms." 492 U.S. at 126, 109 S.Ct. at 2836. In contrast, in *Pacifica Foundation*, the court upheld a ban by the Federal Communications Commission on an indecent but not obscene broadcast. The Court, however, noted that the ban was not an absolute prohibition on broadcast of the language but rather sought to channel the language to times of the day when children most likely would not be hearing it. 438 U.S. at 733, 98 S.Ct. at 3032. *See also* L. Tribe, American Constitutional Law § 12–18 at 938–42 (2d ed. 1988). Whether Baker's bumper sticker could be constitutionally banned by another state statute which, in order to protect minors, sought specifically to regulate or ban vehicular stickers that are indecent or profane but not obscene is an issue the court does not reach. *But see Cunningham v. State*, 260 Ga. 827, 400 S.E.2d 916 (1991) (finding a Georgia statute which banned profane language on bumper stickers to be unconstitutional).

Similarly, this court has not been asked to decide whether § 13A–12–131 is facially unconstitutional. Although in his initial

---

**6.** Moreover, the court would add in passing that the *manner* in which Officer Glover applied the obscenity statute raises a constitutional issue. Glover's threat to prosecute Baker unless he scratched off the offending words might be

viewed as an impermissible "prior restraint." *See Council for Periodical Distributors Association v. Evans*, 642 F.Supp. 552 (M.D.Ala.1986), *aff'd in relevant part*, 827 F.2d 1483 (11th Cir. 1987).

complaint Baker challenged the statute on its face, he subsequently limited his lawsuit to a claim that the law is unconstitutional as applied to his bumper sticker. Therefore, the court does not reach whether § 13A–12–131 could be enforced to ban other bumper stickers with different language. *But see id.* (same).

An appropriate judgment will be entered in accordance with this opinion.

### JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That judgment be and it is hereby entered in favor of plaintiff Wayne Baker and against defendants Lamar Glover and the Attorney General of the State of Alabama; and

(2) That it is DECLARED that the application of § 13A–12–131 of the 1975 Code of Alabama, as amended, to plaintiff Baker's bumper sticker which reads "How's My Driving?  Call 1–800–EAT SHIT!" violates plaintiff Baker's right to freedom of expression protected by the first and fourteenth amendments to the United States Constitution as enforced through 42 U.S.C.A. § 1983.

It is further ORDERED that all costs of these proceedings be and they are hereby taxed against the defendants, for which execution may issue.