[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This trial included an order of temporary custody as to Nancy and Joanni and a neglect petition as to all four children. The order of temporary custody alleges that the two children were in immediate physical danger from their surroundings and the petition alleges neglect in that the children were being denied proper care and attention, physically, emotionally or morally and that they have been abused in that CT Page 7055-f the children have a condition which is the result of maltreatment such as, but not limited to, malnutrition, sexual molestation, deprivation of necessities, emotional maltreatment or cruel punishment.
The parties agree that two issues emerged from the trial, namely: whether DCF has proved that one or more of the children was subject to sexual molestation or abuse, and whether Joanni or Nancy were the victims of physical abuse in the form of cruel punishment or maltreatment.
 I Sexual Molestation or Abuse
The OTC was initiated on the basis of certain photographs of Nancy which the petitioner considered sexually provocative. Without describing the pictures which are in evidence the court finds that the petitioner has failed to sustain her burden of proof by a preponderance of the evidence.
The necessary starting point is the statements of the two children. CT Page 7055-g Both Nancy and Joanni have given conflicting statements. In her initial interview with social worker Schimdt Nancy denied that the pictures showed her. The following day, after having an opportunity to think about it, she stated that the picture showed her sister Joanni's friend wearing a mask to look like her. She also stated that her sister Joanni took the pictures.
In his interview of Joanni, Dr. Jose Villarrubia, a license clinical psychologist, stated that Joanni told him that her Dad had taken the pictures, but later in the interview stated that a friend took the pictures. In Dr. Villarrubia's own words "further questioning as to the content of the pictures yielded different stories."
It is significant that with regard to other aspects of their parental treatment the sisters were staunchly consistent but concerning the photographs they were markedly inconsistent and contradictory. The court cannot credit their statements on this point.
Dr. Villarrubia's testimony on the issue was equally unpersuasive. The court is free to rely on whatever parts of an expert opinion the court CT Page 7055-h finds probative and helpful. Yontef v. Yontef 185 Conn. 275, 281 (1981). Although Dr. Villarrubia gave his opinion of sexual abuse within a reasonable degree of psychological probability, he backed away from that opinion when he stated that Nancy experienced a trauma that appeared to be sexual in origin "but it could also be from other things." On January 12, 2002 he testified as follows: "Since I don't know the parameters, if there is sexual abuse, what the pattern of sexual abuse is, what the age of interest is, you know, what is the range, and I don't know that information. I can generally assume that the pattern — another child could take place of that child that has been abused. But that's only an assumption, because I don't know — I have — I don't have a pattern of abuse established."
The court is unable to accept Dr. Villarrubia's opinion within a reasonable degree of psychological probability.
On other hand, Dr. Villarrubia opined that "Nancy is completely intimidated . . . she is regressing. She is helpless and hopeless at that time. It is a mental state that is very primitive. This is drawn from the fact that she curled up in a fetal position and covered her genitalia." CT Page 7055-i
One wonders whether any female child of six years of age wouldn't do substantially the same thing under the circumstances: a) being brought to a strange place by a male social worker; b) being alone with a strange man without either parent; and c) being asked embarrassing questions of a sexual nature that related to a picture in which she is shown to be covering her genitalia with her hands.
Social worker Schimdt testified that Nancy tantrumed, wet her bed and urinated in anger when given an opportunity for a bathroom. Both Ms. Schmidt and the psychologist stated that both behaviors are symptomatic of sexual trauma. But it is obvious to the court that they are symptomatic of numerous other conditions which have nothing to do with sexual trauma. For instance, there was evidence that Nancy's mother suffered from enuresis as a child so this condition could reasonably be believed to be an inherited trait. There was no reliable evidence to causally connect this behavior with sexual trauma.
Finally, contrary to the petitioner's claim there was no credible evidence that the child attempted to watch a TV program that was age CT Page 7055-j inappropriate for her sexually.
Dr. Villarrubia does not recommend home reunification primarily because of safety issues, that is, inappropriate physical discipline administered to the children and because he was not clear as to the actual sexual functioning of the children's father. It is curious, however, that Dr. Villarrubia expressed no concern over sexual issues concerning the children's mother . . The court finds Dr. Villarrubia's statement puzzling because Dr. Villarrubia's opinion of sexual abuse depends primarily upon the existence of the photographs in question. The mother denies that the father took the pictures. The court believes that in order for Dr. Villarrubia have reached this opinion he must have concluded that the mother was being truthful on that point and not complicitous in producing them. The inevitable conclusion that must be drawn from this is that the father did not take the pictures.
Dr. Villarrubia also expressed the same sort of concern for Ashley who was not removed from the home and yet he did not recommend her removal. Presumably Ashley has been exposed to the same type of claimed parental misconduct as Nancy and Joanni. Also he believes that the perpetrator CT Page 7055-k possibly would turn to Ashley now that both Nancy and Joanni have been removed. There is nothing in the record to indicate that Ashley has been exposed to sexual mistreatment at any time pertinent to this case.
The petitioner claims that the photographs are "sexually explicit." In order to satisfy the definition of the term (Webster's New WorldDictionary of the American Language 2nd College Ed. at 494), the pictures would have to "clearly state" sexual content and "leave nothing implied". To be explicit, there must be no question of their content or their purpose and no doubt as to their meaning. In other words, the meaning of the photos must be unequivocal and unmistakably clear, contrary to Dr. Villarrubia's opinion that a picture of a naked six year old child if found in the home would satisfy that definition. Not only do these photos fail to satisfy the definition but there was absolutely no evidence that they were used or intended for use in any sexually improper way. For example, there was no evidence that either father, mother or children derived any sexual gratification from them or that they caused them to be distributed to a third party for that person's sexual gratification. There was no evidence of harm flowing either from their production or from their content. Nor was there any evidence that these CT Page 7055-l photos were pandered as child pornography. Pictorial expression which is indecent but not sexually explicit or obscene cannot be assigned consequences. Sable Communications of California, Inc. v. FCC,492 U.S. 115, 126 (1989).
Nor does the petitioner's claim that Nancy was sexually molested within the meaning of § 46b-120 or as defined in In Re: Darlene C.,247 Conn. 1 (1998) have any merit. Even if the children's father took the pictures, as stated above, there is no evidence whatsoever that the father made any sexual advances toward the child or derived any sexual pleasure from taking the pictures or viewing them or permitted any third person to do so.
The petitioner further alleges that irrespective of who took the photographs the children were denied proper care and attention, emotionally or morally. Care and attention presumes adequate supervision. Assuming that Joanni rather than her father took the pictures, a single isolated incident of taking a series of five pictures does not establish a pattern or practice nor is it necessarily indicative of past practices nor is it predictive of future practices. CT Page 7055-m
Reliance on In Re: William R. No. 1132676 WL 2001 (Conn. Superior Ct. 2001) is misplaced. The detrimental effects of a child witnessing domestic violence in the home is well documented in the literature.[1]
The court is aware of no literature which supports the petitioner's claim that a single set of photographs of a partially nude child has a similar effect on a child model. Likewise, the other unreported decisions which the petitioner cites are equally unpersuasive because they are clearly distinguishable on their facts.
The question to be asked is: do the photographs themselves signify that Nancy and her siblings are in a condition of neglect, the supportive facts of which are sexual molestation? The answer to that is emphatically negative. The court notes here that Dr. Villarrubia testified that if it were shown that one of the children took the pictures he would reunify the children in the home. It makes no sense to say that the fact that mother disciplined Nancy for doing "nasty stuff" is proof of a pattern or practice of her posing nude. Why would mother discipline the child if the father took the pictures? Why wouldn't Joanni have said "Mommy is always yelling at Dad for doing "nasty stuff with Nancy." Thus, the evidence CT Page 7055-n supports with equal force, an alternative hypothesis of what took place, viz: in the past, Nancy had posed partially nude to enable her sister Joanni to take the pictures and the person the both of them are trying to protect is Joanni.
 II Physical Abuse
All three children complained on numerous occasions of being physically disciplined to an excessive extent. They claimed that they were struck in various parts of the their bodies and that visible marks were left, none of which were visible at the time of inspection. Nancy displayed an injury to her left ankle which the social worker described as a very large wound that was healing and had scabbed over. Nancy stated that her father caused the injury when he struck her with a belt. The children's unwillingness to return home, which was at times exhibited to social workers, is indicative of the children's fear of being blamed for their separation from their parents. This is consistent with: a) fear of excessive physical discipline and b) fear of punishment for either; (i) CT Page 7055-o lying about who took the pictures or (ii) telling the truth about who took them. In any event, regardless of their statements to the social workers, the children told the psychologist and their attorney that they wanted to return home with their parents.
Unlike the children's statements concerning the photographs their statements concerning physical abuse are decidedly more credible for several reasons, to wit: a) they were made by both sisters, b) they were made numerous times consistently, c) there was visible corroboration in the way of a scab on Nancy's ankle which was a healing laceration or abrasion, d) the scab was consistent with being struck with a belt buckle, and e) the children's claims of physical abuse were validated by Dr. Vallarrubia.
Based upon the foregoing analysis the court concludes that the petitioner has failed to sustain her burden of proof with regard to I but has sustained her burden of proof with regard to II. Accordingly, the children are adjudicated neglected in that they have been subject to abuse and have had a condition which is the result of maltreatment or cruel punishment. The children are ordered to be unified with their CT Page 7055-p parents forthwith. In this connection the court has taken into consideration the benefit associated with the children remaining in their present school until the end of the school year but believes that that benefit is outweighed by the benefit to be derived from immediate reunification. Pursuant to P.B. § 33-8 the court orders a period of six months protective supervision. The conditions of the order are as follows:
1) Nancy, Joanni and parents shall initiate or continue, as the case may be, individual and family counseling.
2) Both parents shall successfully complete an approved course in parenting skills.
3) All cameras, video, camcorders and the like shall be rendered inaccessible to the children and shall be kept under lock and key.
4) The parents shall not administer physical discipline to the children in such a way as to cause injury.
5) The parents shall not leave the children unsupervised at any time.
6) DCF shall provide such home services as maybe necessary to facilitate the foregoing.
Mottolese, Judge