DIAL INFORMATION SERVICES CORPORATION OF NEW YORK; Fabulous Associates Incorporated; Source Communications Incorporated; Tele–Pro Communications Corporation, Plaintiffs–Appellees,

v.

Richard L. THORNBURGH, Attorney General of the United States, Defendant–Appellant.

No. 1102, Docket 90–6289.

United States Court of Appeals, Second Circuit.

Argued Feb. 21, 1991.

Decided July 15, 1991.

Edward T. Ferguson, III, Asst. U.S. Atty. S.D. New York (Otto G. Obermaier, U.S. Atty. S.D. New York, Gabriel W. Gorenstein, Asst. U.S. Atty., of counsel), for defendant-appellant.

Joel R. Dichter, New York City (Roger H. Briton, Seham, Klein & Zelman, New York City, of counsel), for plaintiffs-appellees.

Before FEINBERG, MINER and MAHONEY, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Richard L. Thornburgh, Attorney General of the United States, appeals from a preliminary injunction order entered in the United States District Court for the Southern District of New York (Patterson, Jr., J.) enjoining enforcement of a statute that prohibits providers of indecent telephone communications for commercial purposes from making their services available to persons under 18 years of age. The statute in question, the 1989 amendment to the Communications Act of 1934, 47 U.S.C. §§ 223(b) and (c), known as the Helms Amendment after its principal sponsor, establishes a "safe harbor" defense for providers that comply with telephone company presubscription procedures or engage in independent billing and collection. Plaintiffs-appellees characterize their business activities as "the dissemination, receipt and exchange of information by telephone" and refer to

themselves as "electronic publishers" and "information providers." They are in fact purveyors of pornography and, as is to be expected, their challenge to the statute in this case is grounded in the first amendment.

The district court held as a matter of law that the term "indecent" in the statute is void for vagueness. The district court also held, in light of telephone company technical capabilities, that the presubscription method is not the least restrictive means for furthering the interest of the government in protecting minors from the harmful influences of pornography. Finally, the district court determined that the requirement for a system of presubscription or independent billing establishes an unconstitutional prior restraint on speech. On the basis of its void for vagueness holding, the district court issued a nationwide preliminary injunction against enforcement of the statute to the extent that it proscribes indecent communications for commercial purposes. We reverse.

## BACKGROUND

Congress has been concerned for some time with the harmful effects of dial-a-porn messages upon the nation's children. In 1983 Congress amended the Communications Act of 1934 by adding a new subsection (b) to section 223 to proscribe making by telephone "any obscene or indecent communication for commercial purposes to any person under eighteen years of age." 47 U.S.C. § 223(b)(1)(A). That 1983 version of the statute established as a defense that access to the prohibited communications be restricted "to persons eighteen years of age or older in accordance with procedures which the [Federal Communications] Commission shall prescribe by regulation." 47 U.S.C. § 223(b)(2). The Commission adopted a regulation permitting access only between the hours of 9:00 p.m. and 8:00 a.m. or upon payment by credit card before transmission of the message. 49 Fed.Reg. 24,996 (1984). In *Carlin Comms., Inc. v. FCC*, 749 F.2d 113 (2d Cir.1984) (*"Carlin I"*), we invalidated the regulation, holding that it was not shown to provide the least restrictive means of protecting minors from the undesirable messages and that time channeling was underinclusive as well as overinclusive. *Carlin I,* 749 F.2d at 121–22. We also noted that credit card payment was feasible only in the case of live messages. *Id.* at 118–119.

When the Commission in 1985 adopted a regulation requiring dial-a-porn providers either to send messages only to adults who first obtain an access or identification code from the provider or to require payment by credit card before access is permitted, *see* 50 Fed.Reg. 42,699 (1985), we invalidated that regulation as well. We found "that the record [did] not support the FCC's conclusion that the access code requirement is the least restrictive means to regulate dial-a-porn." *Carlin Comms., Inc. v. FCC,* 787 F.2d 846, 855 (2d Cir.1986) (*"Carlin II"*). It was our opinion that the Commission did not give adequate consideration to customer blocking device systems. "Accordingly, we remand[ed] to the Commission for exploration of the alternative of shifting the cost of customer premises blocking equipment to service providers and/or telephone companies." *Id.* at 856 (footnote omitted).

The 1987 regulation adopted by the Commission rejected the customer premises blocking technique, retained as defenses the use of access or identification codes and payment by credit card, and added as a defense the transmission of scrambled messages intelligible only by the use of a descrambling device. *See* 52 Fed.Reg. 17,760 (1987). We found the regulation valid but directed the Commission, in the event that a "less restrictive technology becomes available, ... to reopen its proceedings to consider the costs and benefits of adding its use as an optional defense." *Carlin Comms., Inc. v. FCC,* 837 F.2d 546, 556 (2d Cir.), *cert. denied,* 488 U.S. 924, 109 S.Ct. 305, 102 L.Ed.2d 324 (1988) (*"Carlin III"*). We held the underlying 1983 statute constitutional upon a finding that the term "indecent" as used in the statute was to be given the meaning of "obscene" as defined in *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973). *Carlin III,* 837 F.2d at 560–61.

After our decision in *Carlin III*, Congress in 1988 enacted a new version of 47 U.S.C. § 223(b), prohibiting the making by telephone of "any obscene or indecent communication for commercial purposes to any person." Pub.L. No. 100–297, 102 Stat. 424. This new version of section 223(b) did not include a requirement for the Commission to issue regulations restricting access to those over 18 years of age, in view of the fact that access was barred to adults and children alike. The Supreme Court had no difficulty in upholding as constitutional the prohibition of obscene telephone messages, having "repeatedly held that the protection of the First Amendment does not extend to obscene speech." *Sable Comms. of California, Inc. v. FCC*, 492 U.S. 115, 124, 109 S.Ct. 2829, 2835, 106 L.Ed.2d 93 (1989). The Court also saw no impediment to the use of the "contemporary community standards" formulation in the determination of obscenity, *see Miller*, 413 U.S. at 37, 93 S.Ct. at 2622, finding no constitutional barrier in the prohibition of communications obscene under some local standards but not under others: "If Sable's audience is comprised of different communities with different local standards, Sable ultimately bears the burden of complying with the prohibition on obscene messages." *Sable*, 492 U.S. at 126, 109 S.Ct. at 2836.

With respect to the ban on indecent communications, however, the Court determined that section 223(b) as revised was not drawn narrowly enough to serve the government's legitimate and compelling interest in protecting children from the harmful effects of indecent telephone conversations and therefore violated the First Amendment. *Id.* at 125, 109 S.Ct. at 2835–36. The Court found that "§ 223(b), in its present form, has the invalid effect of limiting the content of adult telephone conversations to that which is suitable for children to hear." *Id.* at 131, 109 S.Ct. at 2839. To deny adults access to indecent but not obscene telephone messages "far exceeds that which is necessary to limit the access of minors to such messages" and "does not survive constitutional scrutiny." *Id.*

Following *Sable*, Congress once again amended section 223 of the Communications Act in regard to restrictions upon live and recorded dial-a-porn messages. Pub.L. No. 101–166, tit. V, § 521(1), 103 Stat. 1159, 1192–93 (1989).[1] In its most recent incarnation, under the name of the Helms Amendment, section 223 prohibits making

1. (b) Prohibited commercial purposes; defense to prosecution
   (1) Whoever knowingly—
   (A) within the United States, by means of telephone, makes (directly or by recording device) any obscene communication for commercial purposes to any person, regardless of whether the maker of such communication placed the call; or
   (B) permits any telephone facility under such person's control to be used for an activity prohibited by subparagraph (A),
   shall be fined in accordance with title 18, United States Code, or imprisoned not more than two years, or both.
   (2) Whoever knowingly—
   (A) within the United States, by means of telephone, makes (directly or by recording device) any indecent communication for commercial purposes which is available to any person under 18 years of age or to any other person without that person's consent, regardless of whether the maker of such communication placed the call; or
   (B) permits any telephone facility under such person's control to be used for an activity prohibited by subparagraph (A), shall be fined not more than $50,000 or imprisoned not more than six months, or both.

   (3) It is a defense to prosecution under paragraph (2) of this subsection that the defendant restrict access to the prohibited communication to persons 18 years of age or older in accordance with subsection (c) of this section and with such procedures as the Commission may prescribe by regulation.
   (4) In addition to the penalties under paragraph (1), whoever, within the United States, intentionally violates paragraph (1) or (2) shall be subject to a fine of not more than $50,000 for each violation. For purposes of this paragraph, each day of violation shall constitute a separate violation.
   (5)(A) In addition to the penalties under paragraphs (1), (2), and (5), whoever, within the United States, violates paragraph (1) or (2) shall be subject to a civil fine of not more than $50,000 for each violation. For purposes of this paragraph, each day of violation shall constitute a separate violation.
   (B) A fine under this paragraph may be assessed either—
   (i) by a court, pursuant to civil action by the Commission or any attorney employed by the Commission who is designated by the Commission for such purposes, or
   (ii) by the Commission after appropriate administrative proceedings.

by telephone "any indecent communication for commercial purposes which is available to any person under 18 years of age or to any other person without that person's consent, regardless of whether the maker of such communication placed the call." 47 U.S.C. § 223(b)(2)(A). The statute affords "safe harbor" defenses to those providers that "restrict access to the prohibited communication to persons 18 years of age or older in accordance with subsection (c) of this section and with such procedures as the Commission may prescribe by regulation." *Id.* § 223(b)(3). Subsection (c) does not impose any obligation upon providers, establishing instead a presubscription requirement upon telephone companies that collect providers' charges from subscribers:

> A common carrier ... shall not, to the extent technically feasible, provide access to a [dial-a-porn message] from the telephone of any subscriber who has not previously requested in writing the carrier to provide access to such communication if the carrier collects from subscribers an identifiable charge ... that the carrier remits, in whole or in part, to the provider....

*Id.* § 223(c)(1).

The new Commission regulations referred to in subsection (b) allow providers to invoke the statutory defense by giving written notice to the telephone company that they are providing covered communications and by either (1) requiring payment by credit card before the message is transmitted, (2) requiring an authorized access or identification code before transmission or (3) scrambling the message so that it is comprehensible only to one using a descrambler. *See* 55 Fed.Reg. 28,915 (to be codified at 47 C.F.R. § 64.201).

Seeking a declaratory judgment that the Helms Amendment violates the first and fifth amendments to the U.S. Constitution as well as preliminary and permanent injunctive relief against its enforcement, plaintiffs filed the complaint in this action on March 14, 1990. Following some expedited discovery in connection with plaintiffs' motion for a preliminary injunction, the district court held six days of evidentiary hearings on the motion. The hearings focused on the question of whether the presubscription provision in the statute is an appropriately tailored means of protecting children from dial-a-porn. The district court "refrain[ed] from consolidating those hearings with a trial on the merits of plaintiffs' request for a permanent injunction ... in deference to the government's re-

---

(6) The Attorney General may bring a suit in the appropriate district court of the United States to enjoin any act or practice which violates paragraph (1) or (2). An injunction may be granted in accordance with the Federal Rules of Civil Procedure.

(c) Restriction on access to subscribers by common carriers; judicial remedies respecting restrictions

(1) A common carrier within the District of Columbia or within any State, or in interstate or foreign commerce, shall not, to the extent technically feasible, provide access to a communication specified in subsection (b) of this section from the telephone of any subscriber who has not previously requested in writing the carrier to provide access to such communication if the carrier collects from subscribers an identifiable charge for such communication that the carrier remits, in whole or in part, to the provider of such communication.

(2) Except as provided in paragraph (3), no cause of action may be brought in any court or administrative agency against any common carrier, or any of its affiliates, including their officers, directors, employees, agents, or authorized representatives on account of—

(A) any action which the carrier demonstrates was taken in good faith to restrict access pursuant to paragraph (1) of this subsection; or

(B) any access permitted—

(i) in good faith reliance upon the lack of any representation by a provider of communications that communications provided by that provider are communications specified in subsection (b) of this section, or

(ii) because a specific representation by the provider did not allow the carrier, acting in good faith, a sufficient period to restrict access to communications described in subsection (b) of this section.

(3) Notwithstanding paragraph (2) of this subsection, a provider of communications services to which subscribers are denied access pursuant to paragraph (1) of this subsection may bring an action for a declaratory judgment or similar action in a court. Any such action shall be limited to the question of whether the communications which the provider seeks to provide fall within the category of communications to which the carrier will provide access only to subscribers who have previously requested such access.

quest for time to gather additional evidence before a trial." *American Info. Enters. v. Thornburgh,* 742 F.Supp. 1255, 1257 (S.D. N.Y.1990). The district court recognized that it was without jurisdiction to review the constitutionality of the FCC regulations, *see* 28 U.S.C. § 2342(1), and therefore announced:

> [T]he only restriction on indecent speech which this Court will review are the statute's effect of limiting [a provider's] communication of indecent speech over telephone lines by causing [the provider] either to engage in billing and collection independent of the telephone company or to be subject to compliance with the telephone company's implementation of a system of written pre-subscription.

742 F.Supp. at 1259.

After reviewing the constitutional challenges to the statute, the district court arrived at the following conclusion in its opinion dated August 10, 1990:

> There is a likelihood that plaintiffs will succeed on the merits of their claims that the Helms Amendment (1) violates the First Amendment by failing to employ the least restrictive means to effect a compelling government interest, (2) violates the First and Fifth Amendments under the void for vagueness doctrine, and (3) violates the First and Fifth Amendments by containing a prior restraint unaccompanied by adequate procedural safeguards. Thus the enforcement of the Helms Amendment presents a threat of imminent irreparable harm to First Amendment freedoms.

*Id.* at 1275. In an order of preliminary injunction dated August 29, 1990, the district court enjoined the Attorney General, "pending the final determination of this action or until the Court otherwise orders, from in any manner or by any means enforcing or implementing the Helms Amendment to the extent it proscribes, regulates or otherwise affects any 'indecent communication for commercial purposes.' "

### DISCUSSION

#### A. *The Void For Vagueness Issue*

■ The Supreme Court in *Sable* recognized "the compelling interest of preventing minors from being exposed to indecent telephone messages." *Sable,* 492 U.S. at 131, 109 S.Ct. at 2839. Accordingly, the district court in the case at bar did not call into question the power of Congress to regulate indecent telephone communications involving children, noting that it was addressing only "the separate issue of the meaning of indecent telephone speech, an issue not directly addressed by the *Sable* Court." *American Information Enterprises,* 742 F.Supp. at 1267 n. 16. Applying to the Helms Amendment the "basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined," *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972), the district court resolved the issue as follows:

> Without any additional specificity, the term "indecency" on its own is too vague to pass constitutional muster. The term indecency does not inherently contain within it a reference to specifically defined conduct, as does the term "obscenity." ... Moreover, the term does not appear in the context of a specific definition of conduct.... The statute and regulations only make a person of common intelligence aware that "offensive" communications are to be restricted.

*American Information Enterprises,* 742 F.Supp. at 1271 (citations omitted).

The district court erred. "Indecent," as used in the Helms Amendment, has been defined clearly by the Federal Communication Commission pursuant to its statutory direction to prescribe by regulation procedures for preventing access to dial-a-porn by minors. 47 U.S.C. § 223(b)(3). This definition was developed during the notice-and-comment rulemaking process in response to a void for vagueness contention similar to that made here:

> [I]n the dial-a-porn context, we believe it is appropriate to define indecency as the description or depiction of sexual or excretory activities or organs in a patently offensive manner as measured by contemporary community standards for the telephone medium.

*In re Regulations Concerning Indecent Communications by Telephone*, Gen. Dkt. No. 90–64, ¶ 12 (Report and Order, released June 29, 1990) (hereafter *FCC Report and Order*). The foregoing interpretation, by the agency charged with the administration of the statute, was not accorded the weight to which it was entitled by the district court. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

It is noteworthy that the Commission's most recent definition of "indecent" tracks one that it developed in the radio broadcast context and that passed muster in the Supreme Court:

> [T]he concept of "indecent" is intimately connected with the exposure of children to language that describes, in terms patently offensive as measured by contemporary community standards for the broadcast medium, sexual or excretory activities and organs, at times of the day when there is a reasonable risk that children may be in the audience.

*FCC v. Pacifica Found.*, 438 U.S. 726, 731–32, 98 S.Ct. 3026, 3031, 57 L.Ed.2d 1073 (1978) (quoting FCC opinion).

Since *Pacifica* implicated the broadcast medium, rather than the telephone medium, the district court found "that it cannot be assumed that the *Pacifica* definition of 'indecent' applies here." 742 F.Supp. at 1271 (footnote omitted). According to the district court, the FCC merely was "assuming" that this definition would be "what courts will find 'indecent' to mean in [the] Helms Amendment." *Id.* at 1269. It is clear, however, that the FCC was not predicting what courts would do. Rather, it was defining a term contained in a statute it was required by Congress to administer. This is no less so because it was following an earlier FCC definition embraced in a court decision relating to the broadcast medium. Accordingly, the term "indecent" as used in the Helms Amendment is sufficiently defined to provide guidance to "the person of ordinary intelligence" in the conduct of his affairs. *Grayned*, 408 U.S. at 108, 92 S.Ct. at 2298. Under the circumstances, appellees' vagueness challenge must be rejected. *See Action for Children's Television v. FCC*, 932 F.2d 1504, 1508 (D.C.Cir.1991); *Information Providers' Coalition for Defense of the First Amendment v. FCC*, 928 F.2d 866, 874–76 (9th Cir.1991); *Action for Children's Television v. FCC*, 852 F.2d 1332, 1338–39 (D.C.Cir.1988).

### B. *The Least Restrictive Means Issue*

■ The government is empowered to "regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest." *Sable*, 492 U.S. at 126, 109 S.Ct. at 2836. The compelling interest in protecting minors from the harms concededly generated by indecent telephone messages that may not be obscene by adult standards having been established, the question of the least restrictive means of achieving the compelling interest must be resolved. "It is not enough to show that the government's ends are compelling; the means must be carefully tailored to achieve those ends." *Id.* Accordingly, in order for appellees to prevail, it must be determined that there are other approaches less restrictive than the Helms Amendment but just as effective in achieving its goal of denying access by minors to indecent dial-a-porn messages. The district court determined that "New York's current voluntary blocking system is adequately protective of children and is less restrictive than either a pre-subscription requirement or an independent billing mechanism." 742 F.Supp. at 1264. We disagree.

Under voluntary blocking, a system approved by the New York Public Service Commission, any subscriber can have sexually explicit telephone communications centrally blocked by contacting the telephone company and requesting such a service, which is free of charge. Central blocking is accomplished when the telephone company, having assigned a three digit prefix to certain types of providers, blocks a household's access to all numbers with that prefix. A parent who receives a bill from the telephone company for dial-a-porn mes-

sages thereby receives notice that calls are being made by a child in the household and may request central blocking.

It seems to us that voluntary blocking would not even come close to eliminating as much of the access of children to dial-a-porn billed by the telephone company as would the presubscription requirement of the Helms Amendment. Blocking has been available for over two years in the New York area, but only four percent of the 4.6 million residential telephone lines in the area having access to the 970 prefix assigned by the telephone company for adult messages have been blocked. According to an "Awareness Study," half of the residential households in New York are not aware of either the availability of dial-a-porn or of blocking. Moreover, in the opinion of a psychiatrist who testified at the preliminary injunction hearing, a child may have suffered serious psychological damage from contact with dial-a-porn before the child's parents become aware from a monthly telephone bill that there has been access to an indecent message. Common sense dictates that a presubscription requirement, like requirements for payment by credit card before a message is transmitted, for use of an authorized access or identification card before transmission, and for a descrambling device for scrambled messages, is more likely to achieve the goal sought than blocking after one or more occasions of access. It always is more effective to lock the barn *before* the horse is stolen.

The district court found "that pre-subscription would be more restrictive on listeners and [providers] than the current voluntary blocking system in place in New York" after noting "the added expense" and "loss of customers" that the providers would sustain by reason of this billing method. 742 F.Supp. at 1263–64. Prepayment and credit card billing are subject to the same economically inhibiting factors as presubscription, according to the district court, which "essentially agree[d] with the government's expert 'that N.Y. Tel. is generally the most profitable billing method available for dial-a-porn companies.'" *Id.* at 1264. With respect to independent bill-

ing by the providers, the district court concluded that the costs thereof "would to some extent reduce the number of [providers], make the unit calls more costly, and to some extent exclude callers." *Id.* (footnote omitted). All of this is to say that, for those who furnish dial-a-porn messages, voluntary blocking is the least economically restrictive and therefore the most desirable means of regulation.

The error of the district court lies in focusing on means, when the focus should be on goals as well as means. The goal here is to prevent access to indecent messages by children. The means must be effective in achieving the goal. Even if voluntary blocking is assumed to be the least restrictive means of accomplishing the congressional purpose, it clearly is not an effective means. To the extent that the district court found that voluntary blocking was not ineffective, 742 F.Supp. at 1266, its finding was clearly erroneous. Voluntary blocking simply does not do the job of shielding minors from dial-a-porn.

We note that in brushing aside the testimony of Dr. Dietz that even minimal exposure to indecent messages can have damaging psychological effects on children, who would be able to gain access before voluntary blocking could be effectuated, the district court found only that the testimony failed to demonstrate "that more than 'a few of the most enterprising and disobedient young people [can or are] manag[ing] to secure access to such [indecent telephone] messages,' despite the presence of a voluntary blocking scheme." *Id.* (quoting *Sable*, 492 U.S. at 130, 109 S.Ct. at 2838) (bracketed material in *American Information Enterprises*). We think that the testimony has considerably more significance. It demonstrated the ineffectiveness of voluntary blocking; the effectiveness of presubscription as a means of preventing access by minors before any harm can be done; and the importance of the congressional goal. As to the district court's reference to disobedient young people, "parents and others ... who have th[e] primary responsibility for children's well-being are entitled to the support of laws designed to

aid discharge of that responsibility." *Ginsberg v. New York*, 390 U.S. 629, 639, 88 S.Ct. 1274, 1280, 20 L.Ed.2d 195 (1968). The Helms Amendment is such a law, "narrowly tailored to serve [a compelling] interest." *Boos v. Barry*, 485 U.S. 312, 324, 108 S.Ct. 1157, 1165, 99 L.Ed.2d 333 (1988).

### C. *The Prior Restraint Issue*

In deciding that there is a likelihood that appellees will succeed on their claims that the Helms Amendment violates the First and Fifth amendments by providing a prior restraint without adequate procedural safeguards, the district court observed that "[s]ection 223(c)(1) requires common carriers to categorize, as either indecent or decent, the content of speech made by [providers] that use a carrier's billing systems." 742 F.Supp. at 1271 (footnote omitted). According to the district court, the effect of this requirement and of the consequent imposition of "a system of pre-subscription or independent billing ... is to restrict the future communication of [protected] speech." *Id.* at 1272.

■ The district court erred in concluding that the statute requires carriers to classify which messages are indecent. The statute actually provides that the dial-a-porn provider must inform the telephone company that the message is indecent and therefore covered by the statute, in order to activate the presubscription provision. *See* 47 U.S.C. § 223(c)(2)(B)(i). This indeed is the interpretation of the FCC, the agency charged, as previously noted, with the enforcement of the statute. *See FCC Report and Order*, ¶ 36. The schemes that have been invalidated by the Supreme Court as prior restraints on speech "had this in common: they gave public officials the power to deny use of a forum in advance of actual expression." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553, 95 S.Ct. 1239, 1244, 43 L.Ed.2d 448 (1975); *see Ward v. Rock Against Racism*, 491 U.S. 781, 795 n. 5, 109 S.Ct. 2746, 2756 n. 5, 105 L.Ed.2d 661 (1989). Only where the government imposes a requirement of advance approval or seeks to enjoin speech can there be prior restraint. *See, e.g., New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). That is not the case here. The Helms Amendment requires no one except dial-a-porn providers to classify their messages, and therefore it cannot be said to operate as a prior restraint on speech. The carriers themselves are not state actors but private companies. *See Information Providers' Coalition*, 928 F.2d at 877.

■ After examining the rules of the New York Public Service Commission, the district court concluded that, but for the Helms Amendment, presubscription and independent billing would be prohibited and thus that "any decision by a carrier in New York to restrict indecent telephone speech through imposing pre-subscription or independent billing will be the products of the Helm Amendment and therefore are attributable to that statute and not private action." 742 F.Supp. at 1273. A finding of state action on this basis is unwarranted. The Helms Amendment does not require the telephone company to implement the presubscription method of billing, unless the company voluntarily has chosen to provide billing services for providers. The Public Service Commission has adopted no rule requiring the telephone company to provide billing and collection services. The telephone company does not act under governmental compulsion either when it undertakes or refuses to undertake dial-a-porn billing. Accordingly, it cannot be a state actor when it implements a presubscription billing system. *See Carlin Comms., Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291, 1297 (9th Cir.1987), *cert. denied*, 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988); *Carlin Comms., Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1357–61 (11th Cir.1986).

■ Finally, even if the telephone company were seen as a state actor, the Helms Amendment cannot be said to operate as a prior restraint on speech. There is no restraint of any kind on adults who seek access to dial-a-porn. A requirement that one desiring access make an advance request therefor simply does not constitute a prior restraint. The telephone company

**1544**

has no right to review the content of dial-a-porn messages. The Helms Amendment requires only that subscribers state in advance their desire to obtain such messages.

## CONCLUSION

The judgment of the district court is reversed, and the matter is remanded for the entry of judgment denying the motion for a preliminary injunction.