886 So.2d 399 (2004)
Michael John SIMMONS, Appellant,
v.
STATE of Florida, Appellee.
No. 1D02-4977.
District Court of Appeal of Florida, First District.
November 15, 2004.
*400 Wm. J. Sheppard and Matthew R. Kachergus of Sheppard, White and Thomas, P.A., Jacksonville, for Appellant.
Charlie Crist, Attorney General; Charlie McCoy, Senior Assistant Attorney General; and Robert R. Wheeler, Assistant Attorney General, Tallahassee, for Appellee.
POLSTON, J.
Appellant Michael John Simmons brings facial constitutional challenges against criminal statutes sections 847.0135 and 847.0138, Florida Statutes (2002), relating to use of the Internet. These constitutional issues are reviewed de novo. See Enter. Leasing Co. S. Cent., Inc. v. Hughes, 833 So.2d 832, 834 (Fla. 1st DCA 2002). Because these statutes are not unconstitutional, we affirm the appellant's convictions under these statutes.
In the early morning hours of July 1, 2002, a Columbia County Deputy Sheriff entered an Internet chat room, titled "I like older men," posing as a 13-year old girl named "Sandi." An on-line conversation ensued between Sandi and appellant, *401 who was in the Commonwealth of Virginia. After Sandi identified herself as a 13-year-old girl in Florida, appellant repeatedly communicated with Sandi about sexual activities, sent nude pictures of himself to Sandi, asked Sandi to send him a pair of panties, asked to teach Sandi about sex, encouraged Sandi to meet him for sexual activities, and eventually made a trip to Lake City, Florida, in order to meet Sandi for three days of sexual activities at a hotel. Members of the Columbia County Sheriff's Office met and arrested appellant at the hotel in Lake City, Florida, upon his arrival.
Appellant was charged in count one with luring or enticing a child by use of an on-line service, in violation of section 847.0135, in count two with transmission of materials harmful to a minor, in violation of section 847.0138, and in count three with carrying a concealed firearm, in violation of section 790.01(2), Florida Statutes (2002). Appellant moved to dismiss count one of the information, alleging that section 847.0135 imposes an unconstitutional burden on interstate commerce in violation of Article I, Section 8, Clause 3 of the United States Constitution. He moved to dismiss count two on the grounds that section 847.0138 violates the First and Fourteenth Amendments to the United States Constitution and Article I, Sections 4 and 9 of the Florida Constitution and imposes an unconstitutional burden on interstate commerce in violation of Article I, Section 8, Clause 3 of the United States Constitution. Appellant also moved to dismiss count two of the information on the basis that his prosecution for violations of both sections 847.0135 and 847.0138 constituted a double jeopardy violation. In addition, appellant moved to dismiss both counts one and two on the ground that the trial court lacked jurisdiction to proceed on the matter.
Following hearings on appellant's motions to dismiss, the trial court denied the motions. After the trial court ruled, appellant pled no contest to counts one and two of the information, reserving his right to appeal the denial of his dispositive motions to dismiss.[1] Appellant was sentenced to two concurrent five-year terms of probation. We affirm the trial court's ruling rejecting the dormant commerce clause challenge against section 847.0135, in count one, in accordance with this court's recent ruling in Cashatt v. State, 873 So.2d 430 (Fla. 1st DCA 2004) (holding that section 847.0135 does not violate the commerce clause).

I.
Appellant challenges section 847.0138 on the basis that it violates the First and Fourteenth Amendments to the United States Constitution and Article I, Sections 4 and 9 of the Florida Constitution. Section 847.0138 states:
(1) For purposes of this section:
(a) "Known by the defendant to be a minor" means that the defendant had actual knowledge or believed that the recipient of the communication was a minor.
(b) "Transmit" means to send to a specific individual known by the defendant to be a minor via electronic mail.
(2) Notwithstanding ss. 847.012 and 847.0133, any person in this state who knew or believed that he or she was transmitting an image, information, or data that is harmful to minors, as defined in s. 847.001, to a specific individual *402 known by the defendant to be a minor in this state commits a felony of the third degree, punishable as provided in s. 775.082, s. 775,083, or s. 775.084.
(3) Notwithstanding ss. 847.012 and 847.0133, any person in any jurisdiction other than this state who knew or believed that he or she was transmitting an image, information, or data that is harmful to minors, as defined in s. 847.001, to a specific individual know by the defendant to be a minor in this state commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(Emphasis added). Relevant definitions, provided in section 847.001, are:
(1) "Adult" means a person 18 years of age or older.
...
(6) "Harmful to minors" means any reproduction, imitation, characterization, description, exhibition, presentation, or representation, of whatever kind or form, depicting nudity, sexual conduct, or sexual excitement when it:
(a) Predominantly appeals to the prurient, shameful, or morbid interest of minors;
(b) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors; and
(c) Taken as a whole, is without serious literary, artistic, political, or scientific value for minors.
Appellant contends that section 847.0138 is not narrowly tailored to serve a compelling state interest, is vague, and is overbroad. We disagree and, therefore, affirm.
Appellant argues that because section 847.0138 restricts expression protected by the First Amendment based on its content, it is presumptively invalid and can only be upheld if it survives strict scrutiny, citing United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). The State concedes that strict scrutiny applies as argued by appellant and makes no argument that the prohibited expression that is "harmful to minors" constitutes obscene communication not protected by the First Amendment.[2] "Sexual expression which is *403 indecent but not obscene is protected by the First Amendment." Sable Communications of Cal., Inc. v. FCC, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989). Accordingly, because section 847.0138 "regulates speech based on its content, it must be narrowly tailored to promote a compelling Government interest. [citing Sable Communications, 492 U.S. at 126, 109 S.Ct. 2829]. If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." Playboy Entm't Group, Inc., 529 U.S. at 813, 120 S.Ct. 1878.
"The state has a compelling interest in protecting the physical and psychological well-being of children, which extends to shielding minors from material that is not obscene by adult standards, but the means must be carefully tailored to achieve that end so as not to unnecessarily deny adults access to material which is indecent (constitutionally protected), but not obscene (unprotected). See Ashcroft v. Free Speech Coalition, 535 U.S. 234, 244-45, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002); Sable Communications, 492 U.S. at 130-31, 109 S.Ct. 2829, 106 L.Ed.2d 93." Cashatt v. State, 873 So.2d 430, 434 (Fla. 1st DCA 2004); see also Reno v. ACLU, 521 U.S. 844, 875, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (stating that the Court has "repeatedly" recognized the government's interest in protecting children from harmful materials, citing Ginsberg v. New York, 390 U.S. 629, 639, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) and FCC v. Pacifica Found., 438 U.S. 726, 749, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978)); Morris v. State, 789 So.2d 1032, 1036 (Fla. 1st DCA 2001) (en banc) (holding that a defendant committed a lewd or lascivious act by telling a child that he desired to engage her in oral sex, using language which described this in a graphic manner; the dissent opined that the majority's construction of the lewd or lascivious statute was "outlawing speech" and should be more narrowly construed to not apply to speech so it would not be unconstitutional). Appellant does not argue that the government lacks a compelling interest, but asserts that section 847.0138 is not sufficiently tailored to promote such an interest.
Appellant argues that section 847.0138 is overbroad because it "limits communications on the Internet to those which would only be suitable for children, thereby depriving adults of their constitutional right to engage in protected speech." We disagree because section 847.0138 only pertains to harmful images, information, or data that is sent to a specific individual known by the defendant to be minor, "via electronic mail." See §§ 847.0138(1)(b), 847.0138(3), Fla. Stat. Because the defendant must have actual knowledge or believe that the recipient of the communication was a minor, see § 847.0138(1)(a), Fla. Stat., adults are not deprived of their constitutional right to engage in protected speech. Communications from adult to adult(s), from adult to those who are believed to be an adult (including minors who are posing as an adult on the Internet), and from adult to those who are not known (by actual knowledge or belief) to be an adult or minor are not restricted by this statute. Only communications to a minor are prohibited.
Much of the constitutional discussion by the parties and by my respected colleague, Judge Browning, in his dissent,[3] involves *404 "chat rooms" and whether indecent, but not obscene, adult to adult speech is chilled by the statute. The analysis for protection of speech under the First Amendment is the same when the speech occurs in a computer chat room with text messaging as when the speech occurs in a normal room with everyone physically present speaking audibly. If an adult and a minor are in a room and the adult conveys harmful material to the minor, there is no chilling effect and no constitutional protection should be afforded to the offending adult. If there are other adults in the room, the offending adult may convey the indecent material to the other adults without concern of violating the statute, even though the minor is present in the room. There is no chilling effect of the statute for adult to adult communication because it has no application.[4] An adult cannot convey harmful material to the minor with other adults watching with constitutional protection just because he can get other adults in the room to watch his harmful, indecent behavior specifically directed to the minor. We decline to follow such twisted constitutional analysis.
Section 847.0138 does not prohibit information posted on websites directed to the public. The prohibited communication from the adult to the minor must be sent by "electronic mail." See § 847.0138(1)(b), Fla. Stat. "Mail" is defined as "[o]ne or more written or oral messages sent electronically (e.g., through e-mail or voicemail)." Black's Law Dictionary 963 (7th ed.1999); see also Merriam-Webster's Collegiate Dictionary 701 (10th ed.1998)(defining "mail" as "messages sent electronically to an individual (as through a computer system))." The electronic mail must be "transmitted," defined in section 847.0138(1)(b) as "to send to a specific individual known by the defendant to be a minor via electronic mail." We agree with the State that for the electronic mail to be sent to a specific individual, it must be specifically addressed to the individual, whether in instant messaging or e-mails sent and read at different times. See Merriam-Webster's Collegiate Dictionary 701 (10th ed.1998) (defining "send" as "to cause to be carried to a destination"). Because this is a plain reading of the statute, we do not rely on any legislative history cited by the parties. See Fla. Dep't of Revenue v. Fla. Mun. Power Agency, 789 So.2d 320, 324 (Fla.2001).
Appellant relies predominately on Reno, 521 U.S. at 875, 117 S.Ct. 2329 (declaring the Communications Decency Act of 1996 unconstitutional), and argues that the government's interest in protecting children "does not justify an unnecessarily broad suppression of speech addressed to adults." "[T]he level of discourse reaching a mailbox simply cannot be limited to that which would be suitable for a sandbox." Id. (quoting Bolger v. Youngs Drug Prods., *405 Corp., 463 U.S. 60, 74-75, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983)). The Court stated that it was an "incorrect factual premise that prohibiting a transmission whenever it is known that one of its recipients is a minor would not interfere with adult-to-adult communication." Id. at 876, 117 S.Ct. 2329. Given the size of potential audiences for most messages, the Court noted that under the Act, the "sender must be charged with knowing that one or more minors will likely view it," and thus communication among adults would be burdened. Id. "The Government agrees that these provisions are applicable whenever `a sender transmits a message to more than one recipient, knowing that at least one of the specific persons receiving the message is a minor.'" Id. at 876 n. 42, 117 S.Ct. 2329.
We agree with the State that Florida's law differs from the federal law at issue in Reno because section 847.0138 only applies to electronic mail sent to a specific individual known to be a minor, not to a group that is "likely" to include a minor. Section 847.0138(1)(b) requires a transmission, which means sending "to a specific individual known by the defendant to be a minor via electronic mail." Significantly, the Communications Decency Act of 1996 at issue in Reno has no similar provision.[5]
Adults may address communications directly to other adults, and to a large group, without violating section 847.0138. Only messages sent to a "specific individual known to be a minor" that are harmful to minors are prohibited. The Florida statute is more narrowly tailored than the Communications Decency Act at issue in Reno. The level of discourse reaching a mailbox may be limited to that which would be suitable for a sandbox if the mail is knowingly sent to a mailbox that is in the sandbox. That is what section 847.0138 does. See Rowan v. United States Post Office Dep't, 397 U.S. 728, 736-38, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970) (holding that a statute prohibiting unwanted mail did not violate the First Amendment; "[w]eighing the highly important right to communicate, but without trying to determine where it fits into constitutional imperatives, against the very basic right to be free from sights, sounds, and tangible matter we do not want, it seems to us that a mailer's right to communicate must stop at the mailbox of an unreceptive addressee;" a householder should not "have to risk that offensive material come into the hands of his children before it can be stopped").

II.
We are not persuaded by appellant's argument that the statute is "impermissibly vague" because the statute applies to minors without attempting to classify materials differently for older age groups. See People v. Hayne, 2002 WL 470853, at *5 (Cal.App. 5th Dist.2002) (rejecting the same argument that a statute is vague; "Appellant's argument that matter may be harmful to a five-year old but not to a 17 year old has no merit. It is within the Legislature's power to determine that certain matter is harmful for all minors. There is no indication that the definition of harmful matter will change depending on the age of the minor."). The Legislature has the responsibility and authority to protect all of our children, even the older ones. See Jones *406 v. State, 640 So.2d 1084, 1085-87 (Fla.1994) (holding that Florida's statutory rape provision is constitutional even though the teenage girls consented; rejecting the argument that minors' rights of privacy "vitiate the legislature's efforts and authority to protect minors from conduct of others"; the "State has the prerogative to safeguard its citizens, particularly children, from potential harm when such harm outweighs the interests of the individual"). Therefore, we decline to rule that additional statutory distinctions should be made for different age groups as held by the Third Circuit in ACLU v. Ashcroft, 322 F.3d 240 (3rd Cir.2003), aff'd and remanded, ___ U.S. ___, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004).[6]
In arguing that the statute is vague, appellant further cites Ashcroft, noting that the Third Circuit Court of Appeals held that the Child Online Protection Act is unconstitutional because the "harmful to minors" language is vague. Id. at 251-53. The "harmful material" is to be reviewed "as a whole," and the court ruled that because the Child Online Protection Act "mandates evaluation of an exhibit on the Internet in isolation, rather than in context" of the work as a whole, it is not narrowly tailored. Id. Because section 847.0138 is narrowly tailored by limiting the harmful material to those sent to minors by electronic mail, it is appropriate to evaluate the communication without considering the rest of the Internet. For example, if excerpts (that taken as a whole are harmful to minors) of a video posted on the Internet (that taken as a whole is not harmful to minors) are cut from the whole video and sent to a minor, then the transmission violates section 847.0138. The whole video posted on the Internet need not be reviewed in context because the restriction only applies to those transmissions to known minors by electronic mail, and the minor only received the excerpts, not the entire video. One who sends harmful materials by electronic mail to known minors cannot be shielded by taking materials out of context and sending only those materials without restriction because they are extracted from some larger work the minors have not seen.[7] Accordingly, section 847.0138 is narrowly tailored and not vague.

III.
Appellant also challenges section 847.0138 as violating the dormant Commerce Clause, which we reject for the same reasons relating to section 847.0135 as addressed in Cashatt, and because a violator who is not in Florida must know or believe that he or she is transmitting harmful material to a Florida minor. See § 847.0138(3), Fla. Stat.
We do not agree with appellant's argument that section 847.0135 violates the Commerce Clause because it subjects interstate use of the Internet to inconsistent state regulation. Congress specifically provides for preemption of state law when it desires. For example, the Florida Supreme Court recently held, in Doe v. America Online, Inc., 783 So.2d 1010 (Fla.2001), that the federal Communications Decency Act preempted Doe's cause of action against AOL for negligence per se in violating section 847.0135 by allowing Richard Lee Russell to lure her son, eleven *407 years old, and two other minor males to engage in sexual activity with each other and Russell.
The Communications Decency Act, 47 U.S.C. § 230(c)(2), restricts civil liability against providers or users of interactive computer services, which was the basis of the Court's ruling. The Act, however, further states that "[n]othing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." Doe, 783 So.2d at 1012 n. 4 (quoting 47 U.S.C. § 230(d)(3)).
Appellant makes no argument that section 847.0135 is contrary to any federal law or that federal law so thoroughly occupies the legislative field as to require a reasonable inference that Congress left no room for it to be supplemented by state law. See Safeharbor Employer Servs. I, Inc. v. Velazquez, 860 So.2d 984 (Fla. 1st DCA 2003) (rejecting the federal law preemption argument because there was no express preemption language, no conflict between state and federal law, and the federal law did not thoroughly occupy the field of law).

Conclusion
Therefore, we reject appellant's facial constitutional challenges against sections 847.0135 and 847.0138, Florida Statutes.
AFFIRMED.
HAWKES, J. concurs; BROWNING, J., concurring in part and dissenting in part by Separate Opinion.
BROWNING, J., concurring in part and dissenting in part.
I concur with the majority opinion as it applies to section 847.0135, Florida Statutes (2002). However, I dissent from the opinion relating to section 847.0138, Florida Statutes (2002).
I dissent because contrary to the majority opinion, section 847.0138 cannot withstand strict scrutiny, as it is not narrowly tailored to promote a compelling governmental interest, is void for vagueness, and violates the overbreadth principle[8] under the First and Fourteenth Amendments to the United States Constitution, and article I, sections 4 and 9, of the Florida Constitution. Also, these deficiencies cause section 847.0138 impermissibly to transgress the Commerce Clause. In my judgment, a review of the appropriate authorities, including those relied upon by the majority, supports a decision that section 847.0138 is facially unconstitutional.

Strict Scrutiny
The majority recognizes that the prohibited expression covered by section 847.0138 is non-obscene and that the prohibition is content-based. Accordingly, it is constitutional only if it can survive the strict scrutiny test. "Strict scrutiny requires that a statute: (1) serve a compelling interest; (2) be narrowly tailored to achieve that interest; and (3) be the least restrictive means of advancing that interest." Sable Communications, 492 U.S. at 126, 109 S.Ct. 2829.
The majority finds that section 847.0138 is narrowly tailored because "electronic mail" is limited to "only messages sent to a specific individual known to be a minor." That statement is true, but it provides an insufficient basis for finding section *408 847.0138 constitutional as narrowly tailored. Mechanically, the statute could, and should, be further limited to one-on-one e-mail communications rather than just to "electronic mail." To its credit, the State, in an attempt to salvage the statute's constitutional validity, advocates in its answer brief that the definition of "electronic mail" be construed by this Court to apply to one-on-one e-mail only.
The majority opines that Appellee did not make the foregoing concession in its brief. I disagree. Statements in Appellee's answer brief belie the majority's conclusion. At pages 3, 16, and 25, respectively, Appellee states: "Similarly, the overbreadth concerns expressed in ACLU v. Ashcroft, 322 F.3d 240 (3rd Cir.2003) in regard to the definition of `harmful to minor' are not applicable to this statute that regulates personal, one-on-one e-mail communication"; "In comparison, § 847.0138, Fla. Stat. (2002) regulates only personal, one-on-one e-mail transmissions"; and " § 847.0138, Fla. Stat. (2002) is not overbroad, but narrowly tailored to prohibit the transmission of harmful materials to a known minor by personal, one-on-one e-mail communication." Thus, the concession was made, and the majority's refusal to acknowledge its existence does not alter this fact. Furthermore, during oral argument this point was addressed with counsel for Appellee, who was asked in substance: "Unless we interpret section 847.0138's definition of `electronic mail' to be limited to personal one-on-one e-mail, is the statute constitutional?" to which he replied "no." Notwithstanding this concession, the majority fails to include such interpretation in its opinion yet finds, what Appellee will not defend, that section 847.0138 is constitutional.
The majority, for its "fall-back position," opines that, even if made, Appellee's concession is erroneous, and the court does not have to accept it, citing Perry, 808 So.2d at 268 as authority. In my judgment, this principle is limited to special circumstances, as in Perry, because concessions are highly favored, and it is extremely rare when any court fails to accept a concession when fairly made by competent counsel, as here. This is a high-profile case, and Appellee's concession necessarily included a determination by the Attorney General's staff, after considerable consideration, that the law is sufficiently clear on this issue for counsel to anticipate that this court would not find § 847.0138 constitutional unless it was limited to one-on-one e-mail. In the past, I have written in opposition to this Court's occasional proclivity to refuse to accept a counsel's concession. See Reed v. State, 783 So.2d 1192 (Fla. 1st DCA 2001), quashed, 837 So.2d 366 (Fla.2002). In Reed, I stated, and it is equally applicable here:
It appears to me the majority is unwarranted substituting its judgment for that of the attorney for the State. Such action entails the risk of this court's being perceived in a non-neutral manner and injects it into an area well-defined and preserved for that of the advocate. I fear that in the future, attorneys will be hesitant to concede error, as here, because of the potential for embarrassment that will necessarily flow when this court points out what it concludes to be an erroneous concession from time to time. Such overruling of the professional judgment of lawyers should occur only when the procedures and jurisdiction of this court are a consideration, and when recognition of a concession effects a repudiation of an established precedent of this court. Clearly, the efficient administration of justice can best be served by approval of concessions by attorneys, except in such limited circumstances. I further feel that an *409 attorney for a party is more likely than a panel of this court to evaluate correctly a substantive point of law as to whether or not a concession should be made in a case.
The majority disregards the "heckler veto" by its sweeping statement at footnote 5 of the majority opinion that: "There is no heckler veto ... because the statute only applies to communications specifically sent to minors." Such statement implies a misunderstanding of a "heckler's veto's" composition. If a minor is an unknown member of a chat room, an over-zealous guardian of perceived "incorrect expression" need only notify all the members of a chat room of the name and minority of a minor member of such chat room to make any future messages subject to the sweep of § 847.001(6)(c). In my judgment, these facts make the "heckler veto" a real threat to free speech, as it places non-obscene expression under the standard of § 847.01138. The majority's refusal to accept this irrefutable circumstance does not obviate its existence and impact. Moreover, I am fortified in my belief by the fact that Justice Stevens has, contrary to the majority view, recognized a "heckler veto" as a real threat to free speech in similar circumstances. Reno v. ACLU, 521 U.S. at 866, 117 S.Ct. 2329.
Notwithstanding the foregoing, the definition of a "minor" in section 847.0138 is not narrowly tailored. A "minor" is defined in section 847.0138 as anyone under 18 years of age. In the context of this statute, such a definition is woefully inadequate. For example: under section 847.0138, a message to a five-year-old is treated the same as a message to a 17-year-old. In other words, it is a "one size fits all" approach in the area of our most treasured liberty  that of free expression. This requires a Web publisher to compose all messages to meet the standards of the youngest minor, because no distinction is made among the levels of intelligence and emotional maturity of minority. In my judgment, to find such a statutory range to be reasonable and clear is illogical on its face. Too broad an intellectual and emotional disparity exists between a five-year-old and a 17-year-old to expect a reasonable person to compose a lawful message to a 17-year-old that might not transgress section 847.0138 as to a five-year-old. The statute would reduce message content to the lowest common denominator, that of the youngest minor, and thereby "chill" free speech in an unconstitutional manner.
An examination of specific subjects highlights the "draconian impact" of section 847.0138 and its constitutional invalidity. For example, the following could be labeled a violation under section 847.0138, depending on the personal view of individual prosecutors: minors could not lawfully be afforded a basic sex education illustration of how to affix a condom to avoid HIV and venereal disease, and illustrations used for legitimate scientific or educational purposes could be a violation. Even a depiction of Michelangelo's David would be suspect because of the statue's exposed genitalia. Furthermore, messages to married persons under 18 years of age would be covered and constitute a violation. Surely such restrictions cannot, and should not, prevail in our society under the freedom of speech guarantee that was enacted to maximize non-obscene expression without regard to conformance with majority standards of "public morality" or "acceptable expression" that prevail from time to time in our society.
Moreover, the constitutional infirmities in defining a "minor" as one under 18 years of age in section 847.0138 have been addressed by other courts in similar situations and determined contrary to the majority opinion. See Ashcroft, 322 F.3d at 240. *410 In Ashcroft the court, in finding substantially the same definition of a minor as utilized in section 847.0138 unconstitutional as not narrowly tailored, stated:
COPA defines the term minor as "any person under 17 [seventeen] years of age." Id. § 231(e)(7).[FN 15] The statute does not limit the term minor in any way, and indeed, in its briefing, the Government, in complete disregard of the text, contends that minor means a "normal, older adolescent." Orig. Gov't Br. At 32; Gov't Br. on Remand at 27-28; Gov't Reply Br. On Remand at 4-5. We need not suggest how the statute's targeted population could be more narrowly defined, because even the Government does not argue, as it could not, that materials that have "serious literary, artistic, political or scientific value" for a sixteen-year-old would have the same value for a minor who is three years old. Nor does any party argue, despite Congress's having targeted and included all minors seventeen or under, that pre-adolescent minors (i.e., ages two, three, four, etc.) could be patently offended by a "normal or perverted sexual act" or have their "prurient interest" aroused by a "post-pubescent female breast," or by being exposed to whatever other material may be designed to appeal to prurient interests.
Id. at 253-54, 122 S.Ct. 1389 (underlining added).
I well realize that enforcement in such situations is subject to the discretion of the particular enforcer, but that is the very reason for the "narrowly tailored" doctrine. People are entitled to exercise freedom of expression in an expansive manner, and section 847.0138 does not remotely meet that requirement. To the contrary, for the reasons stated, section 847.0138 creates a legal dilemma that is impossible to circumvent in perfectly legitimate situations other than by the "chilling" of permissible expression.
The majority discounts the precedential impact of Ashcroft on the basis that the statute there did not contain a provision, as does section 847.0138, limiting a transmission "to a specific individual known by the defendant to be a minor via electronic mail." With all deference to my colleagues, in my judgment this provides no logical basis for finding Ashcroft "not applicable." The definition of "minor" has nothing to do with how a "minor" receives a transmission, but has everything to do with inherent emotional and intellectual differences within the age groups that constitute a "minority." The same problem of tailoring expression to a 17-year-old that is not unlawful as to a five-year old, or vice versa, is a dilemma whether the message is sent to a chat room or by one-on-one e-mail. Accordingly, such a dilemma caused the Ashcroft court to find almost the identical definition of "minor" there to be unconstitutional. The method of transmission of messages to different age groups forming a minority had no bearing on that court's final determination of unconstitutionality for failure to narrowly tailor the definition of "minor." Accordingly, Ashcroft is applicable here and compels a ruling that section 847.0138 is unconstitutional.
The majority bases its determination that the definition of "minor" in section 847.0138 is constitutionally sufficient by reliance on Hayne, 2002 WL 470853. However, a reading of Hayne reveals that the majority, while adopting the court's reasoning that a definition of "harmful matter" as to "minors" is constitutional, ignores other parts of the California statute that justify that court's approach but have no relevancy to section 847.0138. Proper statutory construction requires that a statute be construed as a whole *411 where provisions are dependent, and not in isolation by disregarding a statutory provision that affects another provision. But that is precisely the approach adopted by the majority.
In Hayne the court construed section 288.2 Cal.Code Annotated, which provides:
§ 288.2 Harmful matter sent with intent of seduction of minor.
(a) Every person who, with knowledge that a person is a minor, or who fails to exercise reasonable care in ascertaining the true age of a minor, knowingly distributes, sends, causes to be sent, exhibits, or offers to distribute or exhibit by any means, including, but not limited to, live or recorded telephone messages, any harmful matter, as defined in Section 313, to a minor with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of a minor, and with the intent or for the purpose of seducing a minor, is guilty of a public offense and shall be punished by imprisonment in the state prison or in a county jail. [Emphasis added]
Plainly, a person can be convicted under such provision for furnishing "harmful matter" to a "minor" only if it is combined "with the intent of arousing, appealing to or gratifying the lust or passions or sexual desires of that person or of a minor," and "with intent or for the purpose of seducing a minor." The requirement of intent to sexually arouse and gratify and to seduce a minor provides a common threat of harm throughout minority and supports state action. In contrast, section 847.0138 makes the transmission of "material harmful to minors" an offense based solely on the material's content without any requirement of intent to inflame a minor's passion for the purpose of seduction. Clearly, for these reasons Hayne provides no support for the majority's reliance.
Although the foregoing reasons should preclude the majority's use of Hayne as an authority, there are more provisions of the California Code, omitted from section 847.0138, and ignored by the majority, that support a constitutional determination there. The California Code contains numerous affirmative defenses to prosecution that act as a buffer for protected expression otherwise covered by the statute. These defenses are available when the "act charged was committed in aid of legitimate scientific or educational purposes," or harmful matter is distributed by a parent or guardian to aid legitimate sex education. See section 313.2, 313.3 Cal.Code. These affirmative defenses and the arousal and seductive intent provisions of section 288.2 Cal.Code ensure that minors are protected with substantial notification to potential violators of such proscription without undue impingement of protected free speech.
The constitutional significance of the intent elements of section 288.2, when combined with the affirmative defenses to its implementation, was directly addressed by the Hayne court as follows:
Section 288.2 only criminalizes the transmission of harmful matter to a known minor, with the intent to arouse the minor's sexual desires and with the intent to seduce the minor. The narrow scope of the statute does not infringe upon the dissemination of constitutionally protected speech. For example, it does not prevent adults from transmitting indecent messages to each other. (Hsu, supra, at pp. 988-989, 99 Cal.Rptr.2d 184). The narrowness of the statute distinguished it from the statute at issue in Reno. The CDA did not require the accused to transmit material with the dual intent of arousing the sexual *412 desires of the person or of a minor and of seducing the minor. (Id. at pp. 989-990, 99 Cal.Rptr.2d 184.)
Moreover, the statute's built-in affirmative defenses, further limits the statute's reach. Section 288.2 expressly provides for defenses where a parent transmits harmful material to aid legitimate sex education, or where an adult transmits the material in aid of legitimate scientific or educational purposes. (§ 288.2, subds.(c) & (d)). The narrowness of the statute allowed it to survive a First Amendment challenge. (People v. Hsu, supra, 82 Cal.App.4th at pp. 988-990, 99 Cal.Rptr.2d 184).
Hayne, 2002 WL at *7.
From the above language I conclude that the statute's intent provisions and affirmative defenses are essential to the court's finding that section 282.2 is narrowly tailored. Accordingly, because section 847.0138 contains no similar provisions, in my judgment it is implausible for the majority to advance Hayne as a basis for a finding that section 847.0138 is constitutional. Simply put, Hayne provides no support for the majority's opinion, but supports a contrary result.
The majority dismisses the foregoing distinctions of California law as a "red herring" because of the definition of "harmful to minors" contained in § 847.001(6)(c) (defining harmful materials to include "taken as whole, is without serious literary, artistic, political or scientific value of minors.") With all due deference to my colleagues, this provision provides no basis for disregarding such distinctions and reveals the weak logical underpinning of the majority opinion. The majority apparently ignores, or overlooks, that the California statute considered in Hayne contains almost the identical language as § 847.001(6). See sec. 313 Cal.Code Annotated (defining harmful materials to include "taken as a whole, lacks serious literary artistic, political or scientific value for minors.") Yet, despite this similarity (the difference between "without" and "lacks") the California legislature, and the Hayne court, contrary to the majority's view, place great constitutional emphasis on the distinctions the majority dismisses as a "red herring." In my judgment, disregarding constitutional factors relied upon by the California legislature and the Hayne court to properly protect and preserve freedom of expression to justify a decision finding constitutionality here is hardly susceptible to the moniker "red herring." These factors are serious matters that affect the very basis of our ordered liberty  freedom of speech, free from governmental regulation of non-obscene expression regardless of how well-intended the regulation might be, and the public view of acceptable expression that prevails from time-to-time. To disregard such concepts as the majority does leaves ajar the "door of censorship" under the well-intended dictates of public officials, and citizens that push them to enforce conformity to popular community mores. Free expression is the bedrock of our society, and it should not be restricted except in clearly defined areas not accomplished by § 847.001(6)(c).
In a similar vein the majority dismisses my metaphorical reference to the statue of David. I stand by that analogy. There are profound differences between the age levels of minority. Can it be seriously argued that the sexuality of a six-year old is not radically different from a 17-year old? If not, I would not publish this dissent that in large part is predicated on the legislature's failure to consider such obvious differences of minority age levels.

Overbreadth
Section 847.0138 is unconstitutional because it violates the overbreadth doctrine. *413 That doctrine precludes an abridgement of unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process. See Ashcroft v. Free Speech Coalition, 535 U.S. 234, 255, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). For the reasons stated under my strict scrutiny analysis, section 847.0138 is unconstitutional as too broad. Clearly, the legislature's failure to define "minor" more precisely and to limit section 847.0138's scope to one-on-one e-mail, and its further failure to exempt messages to married persons under 18 years of age, e.g., when a parent transmits "harmful material" to aid sex education, or transmissions in aid of legitimate scientific or educational purposes, violate the overbreadth doctrine, and section 847.0138 is, accordingly, unconstitutional.

Vagueness
Also, section 847.0138 is too vague to pass constitutional muster. A statute is unconstitutionally vague if it prohibits an act written in a manner "so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application." Connally v. Gen. Const. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926).
This principle was also specifically addressed by the Ashcroft court as follows:
COPA's definition of "minor" includes all children under the age of seventeen, as we have noted. Because the statute's definition of minor is all-inclusive, and provides no age "floor," a Web publisher will be forced to guess at the bottom end of the range of ages to which the statute applies. The fearful Web publisher therefore will be forced to assume, and conform his conduct to, the youngest minor to whom the statute conceivably could apply. We cannot say whether such a minor would be five years of age, three years, or even two months. Because we do not think a Web publisher will be able to make such a determination either, we do not think that they have fair notice of what conduct would subject them to criminal sanctions under COPA. As a result of this vagueness, Web publishers will be deterred from engaging in a wide range of constitutionally protected speech. The chilling effect caused by this vagueness offends the Constitution.
Ashcroft, 322 F.3d at 268 n. 37.
Clearly, that rationale applies to section 847.0138, and it constitutionally fails on that premise, if no other.

Commerce Clause
Finally, in my judgment section 847.0138 impermissibly burdens interstate commerce and is, accordingly, invalid.
The U.S. Supreme Court promulgated the standard for determining whether a state regulation violates the Commerce Clause:
If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

PSINet, Inc v. Chapman, 362 F.3d 227, 255 (4th Cir.2004) (Niemeyer, J., dissenting), quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970) (emphasis added).
In my judgment the impact of section 847.0138 on users of the Web would unreasonably burden interstate commerce. It would be impossible for out-of-state Web users to communicate about science, sex education, or medicine, and marital subjects with a married minor without fear of violation of section 847.0138. The only plausible alternative is for potential Web *414 users to refrain from its use in such important areas. This is too severe a burden on the flow of expression in interstate commerce in view of the available alternatives that would lessen section 847.0138's severe impact. Accordingly, in my judgment, section 847.0138 will unduly burden interstate commerce and is invalid. See Pataki, 969 F.Supp. at 160.

Conclusion
As always, when a statute is enacted for the protection of minors, one is hesitant to determine the effort to be unconstitutional. However, high motive does not equal constitutional compliance. The legislature in its drafting of section 847.0138 has produced an unbalanced proscription that violates too many constitutional guarantees. When content-protected speech is statutorily regulated, the question is not whether the statute is well-intended, consistent with a majority's mores, or how a majority of citizens would ideally have all expression socially tailored, but the question is whether the statute is constitutional. Debate concerning the wisdom of this principle is not for this court's participation. Our ancestors decided long ago that free people exercising expansive expression would shape this country's destiny. Our U.S. Supreme Court stated this rationale in Reno, 521 U.S. at 844, 117 S.Ct. 2329, opining:
As a matter of constitutional tradition, in the absence of evidence to the contrary, we presume that governmental regulation of the content of speech is more likely to interfere with the free exchange of ideas than to encourage it. The interest in encouraging freedom of expression in a democratic society outweighs any theoretical but unproven benefit of censorship.
In my judgment, section 847.0138, while well-intended, fails to comply with this constitutional concept and is tantamount to censorship. By this Court's delaying that determination, I do not think the best interest of minors or the public is well-served.
For these reasons, I dissent from the majority opinion relating to section 847.0138. I would affirm Appellant's conviction under section 847.0135 and reverse his conviction under section 847.0138 because such statute is facially unconstitutional for the reasons stated.
NOTES
[1] Appellant's double jeopardy and subject matter jurisdiction arguments are not raised in this appeal.
[2] Minors have First Amendment rights to use the Internet for speech purposes. See McConnell v. Fed. Election Comm'n, 540 U.S. 93, 124 S.Ct. 619, 639, 157 L.Ed.2d 491 (2003) (Rehnquist, C.J.) (recognizing that minors enjoy the protection of the First Amendment, citing Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 511-13, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969)). Thus, there are competing First Amendment interests at stake. These statutory restrictions protect the integrity of the Internet's accessibility for minors, enhancing their speech, but costs adults the ability to communicate harmful materials to minors. The United States Supreme Court, in McConnell, 124 S.Ct. at 655-58 & n. 40 (Stevens, J. and O'Connor, J.), recently ruled that strict scrutiny does not apply to legislation aimed at preventing corruption because it protects the integrity of the process, benefitting public participation in political debate. Similarly, strict scrutiny may not apply in the instant case because, by eliminating the potential chilling effects of unchecked harm directed to minors on the Internet, section 847.0138 protects the integrity of the Internet and minors' use of it as a medium for free speech, thereby guarding minors' free speech rights. Therefore, free speech is increased, not decreased, and the content-based restriction on free speech requiring strict scrutiny does not apply. If political speech, a core First Amendment right, may be restricted without applying strict scrutiny, then speech that is harmful to minors should be subject to restriction without strict scrutiny. See McConnell, 124 S.Ct. at 720 (Scalia, J. concurring and dissenting) (disagreeing with the majority opinion for allowing restrictions on speech criticizing the government while it has "sternly disapproved of restrictions" on virtual child pornography). However, we need not decide this issue because we conclude that section 847.0138 is constitutional even if strict scrutiny applies.
[3] Contrary to the dissent, the State has not, in its briefs or oral argument, requested us to redefine the statute to "fix it" or conceded that the statute is not constitutional. Even had the State done so, we would ignore it as an erroneous concession. See Perry v. State, 808 So.2d 268 (Fla. 1st DCA 2002) (ruling that erroneous concessions by the state should not be accepted). The dissent states that the "statute could, and should, be further limited to one-on-one e-mail communications rather than just to `electronic mail.'" This definition is too narrow as illustrated by the facts of this case. The legislature properly contemplated that electronic mail sent by instant messaging, as sent by the appellant, would be used and should be prohibited in addition to e-mail transmissions sent and read at different times. Moreover, why would it be permissible to limit one [adult]-on-one [minor] harmful transmissions but not one [adult]-on-twenty-five [minors]? Obviously, harmful transmissions sent to more than one minor are not somehow more constitutional. The statute does not need redefinition as the appellant and dissent suggests.
[4] There is no "heckler veto" as stated by the appellant and dissent because the statute only applies to communications specifically sent to known minors.
[5] Likewise, the Child Online Protection Act, at issue in ACLU v. Ashcroft, 322 F.3d 240 (3rd Cir.2003), aff'd and remanded, ___ U.S. ___, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004), does not have a provision similar to section 847.0138. Therefore, the case is not applicable and the recent ruling by the United States Supreme Court does not substantively affect the analysis in this case.
[6] The United States Supreme Court's ruling did not address this issue.
[7] The dissent's concern over minors' access to Michelangelo's David and the like, and attempted distinction of Hayne, is a red herring because of the definition of "harmful to minors." See § 847.001(6)(c) (defining harmful materials to include "taken as whole, is without serious literary, artistic, political, or scientific value for minors").
[8] These principles often overlap, and I will attempt to advance them in the same manner as used in the majority opinion for clarity.